[Civ. No. 2679. Fourth Dist. Apr. 7, 1942.]

VERNE CLARKE, Appellant, v. VOLPA BROTHERS (a Copartnership) et al., Respondents.

Rae B. Carter and Adams & Griswold for Appellant.

Chester O. Hansen and John Said for Respondents.

GRIFFIN, J. — In October, 1940, the Division of Highways of the State of California was constructing a new bridge just west of the town of Minkler, near Fresno. Respondent Pete Volpa was a truck driver employed by the respondent Volpa Brothers and was engaged, at the time of

the happening of this accident, in hauling gravel from a gravel pit located on private property to a point on the highway where the new bridge was being constructed. Leading from the highway, and along the edge of the gravel pit, an area had been "bulldozed" to make a private roadway for the loading trucks. Empty trucks coming westerly from the bridge turned off the highway into the roadway and backed along it until a proper position for loading was reached adjacent to the shovel, which was in the gravel pit. An area in the roadway 40 or 50 feet south of the shovel permitted an incoming truck to park if another truck was loading at the shovel or making an exit. The trucks were steel-bodied, weighed over five tons unloaded, and were about six feet wide and ten feet long. They were equipped with dual rear wheels and with protective shields back of the cabs. These trucks were loaded by a so-called "truck shovel," similar in many respects to the more common steam shovel, which truck shovel was operated by one John Gale for an independent contractor. The appellant Verne Clarke was the assistant and helper of the operator of the truck shovel. The gravel pit or bed was west of the roadway, below its level, and covered with water. In scooping out gravel the shovel had made a well-defined cut with fairly well-defined banks. The east bank of the cut abutted the west side of the roadway which was made use of by the trucks. Commencing near the truck end of the truck shovel and extending to the shovel end, the wheels of incoming and outgoing trucks had worn ruts about ten inches deep in places in the roadway. It was the practice of trucks to back along these ruts. According to testimony adduced by respondents the most westerly rut was about two feet east of the edge of the east bank of the cut. According to testimony adduced by appellant, the most westerly rut was about four feet from that bank. The version of the accident related by appellant Verne Clarke, and resulting in his injury, may be thus summarized.

After the last truck was loaded on that afternoon, greasing of the shovel was required. At just about quitting time he walked about 150 feet to Gale's automobile which was parked in the area provided for that purpose on the roadway and obtained the equipment for greasing. He returned to the truck shovel (which took from five to ten minutes) with the equipment, and for its use laid a newspaper opposite the cab of the truck shovel and at the edge of the east bank of the

cut at a place which would be between the shovel truck and the ruts in the roadway made by the loading trucks. He was squatting down facing north about 6½ or 7 inches from the edge of the bank with the newspaper directly in front of him and preparing the greasing equipment when the truck, which was backing up, struck him. During these movements he never saw nor heard the truck which ran over him while backing into place to be loaded. The right rear wheel of the truck passed completely over the full length of his body, causing considerable injury.

The version of the accident given by respondent Pete Volpa is as follows: He backed the empty truck from the highway along the roadway until he noticed that another truck was loading at the shovel. He accordingly parked the truck in the area provided for that purpose. When the other truck passed by, the driver raised five fingers indicating that it was five minutes until four p. m., and that respondent just had that amount of time to load one more truckful before four o'clock. He then backed toward the shovel, standing up and looking back over his left shoulder. He saw no one on the roadway nor in the vicinity thereof as he continued backing. He backed the truck into the ruts in the roadway and into position before 4 p. m. After backing the truck 50 or 75 feet in the ruts he stopped and then learned that appellant had been caught under the right rear wheel of the truck.

The only contention advanced by appellant on this appeal is that certain instructions offered by respondents and given by the court "deprived plaintiff of the right to a verdict," and "erroneously conferred upon defendants a right to a verdict." These instructions read as follows (emphasis added by appellant):

"*I instruct you that the defendant, Pete Volpa, had a right to haul his truck over the strip of ground made by the trucks hauling sand and that such right was equal in every respect to the right of the plaintiff to be where he was at the time of the accident.* Just as their rights were equal, so also was the duty of each to exercise ordinary care under all the circumstances equal. *The plaintiff could not assume, or act or rely upon the assumption that he would not be injured by defendants' truck or by any other truck passing by the place where he was,* but he was required to keep such a lookout for such trucks as under similar circumstances an ordinarily prudent person would have kept for his own safety and protection."

"If you find from the evidence that trucks were backing

up over the same path pursued by Pete Volpa's truck with regularity and at brief intervals of time, that these trucks were so constructed and loaded that the driver thereof could not, while backing them, observe objects or persons immediately back of them, and that these trucks in backing followed approximately the same track or course, *then I instruct you that any place in the track or course so followed by these trucks was a position of danger."*

"In determining whether or not the plaintiff was as vigilant and watchful for his own safety and protection as the law, as stated in these instructions, required him to be, *you may consider his position with reference to the course traveled by the trucks, the frequence and regularity with which trucks had been passing by his position, the noise made by the trucks in approaching and passing his position, the speed at which the trucks approached and passed by, his opportunity, if any, for seeing the trucks as they approached and passed by* together with any and all other circumstances and conditions surrounding the accident as established by the evidence."

█ It is argued first that the opening sentence of the instruction first quoted starts with misleading and confusing language by referring to "the strip of ground made by the trucks hauling sand"; that there is no evidence in the record that any strip of ground was made by the trucks or those operating them; that what the evidence shows is that the private roadway between the highway and the truck shovel was made by those who maintained and operated the truck shovel and that a jury would naturally conclude that the instruction referred to the entire length and breadth of this private roadway, and not merely to such part thereof as might be between the ruts made by the trucks. There is no merit to this contention. A careful review of the record in this case will clearly show that the trucks, in backing into such a position that they could be loaded by the "shovel operator," had created a well-defined "strip" marked with ruts in the ground.

The entire roadway, cleared for the use of the trucks, was not "made by the trucks" in the first instance. It was made by use of a "bulldozer." Part of the evidence on this question which clarifies what was meant by the use of the words "strip of ground made by the trucks" in the first instruction quoted, is reflected in the deposition of Pete Volpa, which is as follows:

"Q. In backing your truck into position, how close did you back your truck, how close did you back your truck to that edge or bank along beside the shovel? A. Well, we got —as we back in there, we had formed ruts, the tires had formed ruts. It was kind of soft-like, and when you got in those ruts you could not get out of it, so you just backed up in those ruts. Q. Were you backing up in those ruts at the time Clarke was injured? A. When you got in those ruts, you couldn't get out, you had to get in those ruts in order to back out."

Considering the evidence in connection with the instructions given in this respect and on this subject, it is quite apparent that the jury could not have been confused as claimed by appellant, in using the terms "strip of ground made by the trucks," "in the track or course so followed by these trucks," and "to the course traveled by the trucks."

Appellant adduced testimony showing that when the truck struck him he was up on the bank of the cut, three or four feet west of the most westerly rut in the roadway, and in a position of safety so far as trucks traveling in the ruts were concerned. The effect of the portions of the instructions, as given, was to withdraw such testimony from the consideration of the jury and to tell the jury either that when plaintiff was struck by the truck *he was on that part of the roadway between the ruts made by the trucks,* or that he was bound to anticipate that trucks would depart from the usual practice of following the ruts and without warning travel anywhere over the length or breadth of the roadway made by the "bulldozer." The concluding sentence of the first-quoted instruction emphasized this first error in the instruction by telling the jury that "plaintiff could not assume, or act or rely upon the assumption that he would not be injured by defendants' truck or by any other truck *passing by the place where he was.*" This language placed upon plaintiff the duty of anticipating negligence on the part of the defendants, even if plaintiff was in a position of safety on the bank of the cut and clear of all trucks traveling in the ruts. (*Rosella* v. *Paxinos,* 110 Cal. App. 299, 302 [294 Pac. 39].)

There was a conflict in the evidence as to whether appellant was in a position of danger. Appellant also adduced testimony showing that the truck struck him after working hours were over and at a time when the advent of a truck was not to be expected. It was a question, therefore, for the jury to determine whether the truck had a right to be wher-

ever plaintiff was at the time of the accident and whether their rights were "equal in every respect."

These basic errors appear in the first quoted instruction and reappear in the other quoted instruction as italicized. Although these instructions offered by respondent and given by the court were patterned almost literally from instructions given in the case of *Warnke* v. *Griffith Co.*, 133 Cal. App. 481, 491-2 [24 P. (2d) 583], they were not, by reason of that fact, proper here. There the evidence was undisputed that the injured person was standing in a position of danger, and it was also undisputed that he knew it was a dangerous place at the time in question. (*Burke* v. *John E. Marshall, Inc.*, 42 Cal. App. (2d) 195, 202 [108 P. (2d) 738].) The instructions taken from that case, therefore, were not applicable to the instant case because those facts in the instant case were in dispute. In the instruction as given, those disputed facts were not left for a determination of the jury.

The rule here applicable is set forth in 24 Cal. Jur., page 841, section 101, which reads:

"The province of the jury is invaded where an instruction assumes the existence of a fact which is not in evidence, or with respect to which there is a conflict of evidence, and any error in this respect is not, it has been held, cured by other charges which submit to the jury the question whether such fact exists. The rule is not violated, however, by an instruction which merely states the claim of a party, but does not intimate that such claim has been proved, or which opens with the formula 'if you find' certain facts to be true."

The application of this rule has been uniform. (*Preston* v. *Keys*, 23 Cal. 193, 195; *Ryan* v. *Los Angeles I. & C. S. Co.*, 112 Cal. 244, 254 [44 Pac. 471, 32 L. R. A. 524]; *Vinther* v. *Sunset Mutual Life Insurance Co.*, 11 Cal. App. (2d) 118, 123 [53 P. (2d) 182].) An application of these rules to the challenged instructions clearly demonstrates the error. The unmistakable error of the instruction was to tell the jury that the plaintiff was injured where the truck had an equal right to be at the time of such injury, and the province of the jury was plainly invaded by the instruction which assumed the existence of facts with respect to which there was a conflict of evidence. Respondents argue that their instructions were based on their theory of the case and that since appellant neglected to request the court to give any instructions based on his theory of the case and the evidence, appellant cannot com-

plain of respondents' instructions. (Citing *Erxleben* v. *Kaster*, (Mo. App.) 21 S. W. (2d) 195; *Potter* v. *Back Country Transportation Co.*, 33 Cal. App. 24 [164 Pac. 342] ; *Comstock* v. *Morse*, 107 Cal. App. 71 [290 Pac. 108].) This argument is not tenable. In the cases cited by respondents the question was left to the jury whether the disputed facts which would support the legal principle expounded in the instruction had been established. That was not done in the instant case.

For the reasons stated, the judgment should be reversed. The judgment is reversed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied May 7, 1942, and respondents' petition for a hearing by the Supreme Court was denied June 1, 1942.