[Civ. No. 1000.   Third Appellate District.—December 30, 1912.]

## CHRISTIAN PETERSEN, Respondent, v. CALIFORNIA COTTON MILLS COMPANY (a Corporation), Appellant.

NEGLIGENCE—INJURY TO MINOR SERVANT—ORDER OF FOREMAN—INSECURE LADDER PLACED BY FOREMAN — SLIPPING — INJURY FROM SHAFT WITH SET-SCREWS—WANT OF CONTRIBUTORY NEGLIGENCE.— Where a minor servant, seventeen years of age, who had been employed as a "roustabout" in a cotton mill for seven months, had oiled machinery, had met with a previous accident, and had a general knowledge as to how a ladder ought to be placed to make it secure, was ordered by the foreman to ascend a ladder placed by himself against a beam, about sixteen feet almost perpendicular from the floor, without hooks to secure it in position, and without warning of danger, which order directed the minor to place a compound on a revolving belt, and while so engaged, the ladder slipped sideways, and he was precipitated on a revolving shaft with projecting set-screws, around which he was whirled to his serious injury, defendant is chargeable with negligence and is liable for damages resulting therefrom, but, upon the facts, the minor is not chargeable with contributory negligence.

QUESTION OF NEGLIGENCE OF PLAINTIFF NOT TO BE WITHDRAWN FROM JURY—CIRCUMSTANCES CONSIDERED.—The circumstances to be considered in determining the question whether the negligence of the plaintiff should be withdrawn from the jury, briefly stated, are the complexity of the situation, the fact that the plaintiff was a minor and presumably without the judgment of an adult, that he was ordered by his superior to do the work which was outside of and more hazardous than his usual employment; that he was expected to and did obey promptly, and that he had a right to assume that the ladder was placed with due regard for his safety. In view of those incidents, it cannot be said, as matter of law, that no other rational inference can be drawn than that plaintiff was guilty of contributory negligence.

ID.—ORDINARY CARE.—In determining what is ordinary care on the part of a person all· the circumstances of his position should be regarded, including in cases like the present, the servant's orders, the standards of his duty, the apparent risk to be met and the purpose of his action no less than his physical surroundings.

ID.—INJURY RESULTING FROM COMPLIANCE WITH DIRECT ORDER.—Where the servant was injured as the result of his compliance with a direct order, the servant is not necessarily negligent where he acts upon

the presumption that his employer and his employer's agents have done or will do their duty. The order having a natural tendency to throw the servant off his guard, may properly be considered to excuse him from the exercise of the same degree of care as would have been incumbent upon him if the case had not involved this factor.

ID.—DUTY OF MASTER TO WARN IMMATURE SERVANT.—The rule of reasonable and just action on the part of the master requires him to give suitable warning and instruction to a minor employee in regard to any danger whether open or concealed, where the danger is not sufficiently obvious to the employee, in the exercise of ordinary care on his part, this care being measured by the maturity of his faculties, and the amount of his experience. This rule applies not only so far as to require the employer to give general warnings and instructions to minor employees as to the dangers attending the duties they are expected to perform, but there is a special duty resting upon the employer of giving instructions as to any new dangers whenever he orders the minor employee into a *new situation*, which without such warning and instruction may be dangerous to him.

ID.—SPECIAL FINDINGS NOT INCONSISTENT WITH GENERAL VERDICT—FINDING OF CONCLUSION OF LAW DISREGARDED.—It is held that the special findings are not inconsistent with the general verdict for the plaintiff, and that a finding as to a matter of law should be disregarded. To permit the jury to return conclusions of law would defeat the manifest purpose of the statute. All presumptions are in favor of the general verdict, and it must control, if the special is not absolutely irreconcilable therewith.

INSTRUCTIONS FULL AND WITHOUT SUBSTANTIAL ERROR.—It is held that the instructions seem to have covered every phase of the legal propositions involved in the case, and no substantial error is found therein, and they are not subject to the criticisms made thereupon by the defendant appealing.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. William H. Waste, Judge.

The facts are stated in the opinion of the court.

C. H. Wilson, and George E. De Golia, for Appellant.

Snook & Church, for Respondent.

BURNETT, J.—While in the employ of defendant, plaintiff was injured as a result of being caught by certain revolving machinery. His action for damages resulted in a verdict by a jury in his favor for the sum of four thousand dollars.

The appeal by defendant is from the judgment and an order denying its motion for a new trial.

It is alleged in the complaint that plaintiff was ordered and directed by one Peter MacDougald, the foreman in the machine-shop, to apply some compound on a belt which was revolving at a high rate of speed between pulleys attached to a beam at a height of about sixteen feet from the floor; that the foreman placed a ladder against said beam and directed plaintiff to mount it for the purpose of applying said compound; that the task was very dangerous since the ladder was not supplied with hooks to hold it firm and it was but little over sixteen feet long, so that when placed against said beam it stood almost perpendicular to the floor of the shop; that the foreman and defendant knew that it was not a proper or safe ladder with which to perform said task; that the plaintiff was not acquainted with and had no knowledge of the danger in mounting said ladder and neither said foreman nor said defendant warned or instructed him that said ladder was unsafe or dangerous; that plaintiff obeyed the said order of the foreman and, while applying the compound to the belt, the ladder slipped and slided sideways, without any fault of plaintiff, and thereby he was precipitated against a revolving shaft which was propelled by the said belt, and he was whirled about the shaft with great violence and serious injury resulted; that the shaft was in two parts and was coupled together by means of a collar fastened by set-screws which projected about three-fourths of an inch from the surface; that the coupling was unsafe and dangerous by reason of said projecting screws; that this was known to defendant and unknown to plaintiff and that defendant well knew that plaintiff was a minor of the age of seventeen years or thereabouts and had never been employed as a machinist or mechanic and did not knew or appreciate the danger or risk in the use of, or contact with, the machinery in said shop or in the use of or handling of the appliances or tools in said shop and well knew that plaintiff was ignorant of the hazard and danger connected with said employment.

The plaintiff testified that he had been continuously at work for defendant for seven months, that he worked in the machine-shop, that he was just a "roustabout," and that he did everything that he was asked to do, "such as running

errands, carrying tools, doing oiling and other things like that.'' He said that immediately prior to the accident he was doing a job on the lathe, getting the center on some truck wheels. He described the accident as follows: ''The accident occurred about eleven o'clock in the morning. As I was working at the lathe the first thing I heard was Mr. Mac-Dougald yelling at me, and he asked me if I didn't hear that belt squeaking, and as soon as he yelled at me I ran over to see what he wanted, and he says: 'Get some compound and put some compound on it,' and I did that; it was laying right near me and I got the compound. Mr. MacDougald was the foreman of the shop and had been the foreman during the seven months that I had worked there immediately prior to the accident. I had been in the habit of doing as he directed in the shop. There was a little noise in the shop. I was about six feet from him when he spoke to me. I then took the compound, as he told me to do, and went up the ladder and reached through to apply the compound onto the belt, and somehow or other the ladder slipped and I was thrown over onto the coupling and my clothing was caught and I was whirled around and became unconscious. The foreman, MacDougald, placed the ladder there about ten minutes prior to the accident. I saw him place it there. The ladder was placed almost perpendicularly, the upper portion projecting slightly over the beam.'' He stated further that the belt was revolving at a high rate of speed; that he had never been up on that ladder before or on any ladder to apply compound to that belt or shaft; that he had never examined the shaft or noticed how it was joined; that his usual work was confined to the floor; that the foreman did not caution him as to any danger; that his attention was never directed to the hazardous risk of any task he was performing in the shop; that when he mounted the ladder he did not know that he was in an unsafe position or that it was dangerous to be in proximity to the shaft.

Considering the distance from the floor to the belt, the rapidity with which the latter was moving, the close proximity of the shaft and the projecting screws and also the position of the ladder, it is unquestionable that he was in a perilous position when he had ascended to the belt in obedience to the command of the foreman. It is equally undeniable, and

it is not denied, that he should have been cautioned or warned of the danger by the foreman unless he appreciated the situation and needed no such admonition.   But, while admitting that "it was the duty of the defendant to instruct the plaintiff, if he were ignorant as to the risks and dangers of his employment," it is insisted by appellant that "the law does not require a useless act," and that by reason of "instruction, observation and prior experience" the plaintiff had knowledge of the danger and, therefore, he is deemed in law to have assumed the risk, or, in other words, he "was guilty of contributory negligence in encountering a known danger." In support of this position quotation is made from the cross-examination of plaintiff in which he described fully his work and experience in the shop and displayed such knowledge of the mechanism as we might expect from one engaged as he was and for the stated length of time.   To show that he was familiar with the danger incident to the operation of the various contrivances, such questions as the following were asked, to which we also give the answers: "What oiling did you do for the defendant?   A. Only the oiling that was customary for the boys around the place to do; that is all I did. Q. Well, you oiled the bearings of the machines?   A. Yes, sir.   Q. Now, when you left the employ of the defendant on the 7th of April, 1902, what was the cause of your leaving? You had an accident?   A. Yes, sir.   Q. What was that accident?   A. I had got my arm hurt.   Q. The same arm?   A. Yes, sir.   Q. How did it happen?   A. I was down in the basement putting water on some bearings that were running hot, and they instructed me to stay there and watch them and put water on them all the time and they placed—Mr. Rattray placed a ladder so that I could climb up and reach, and, of course, that is the way I got hurt.   Q. That ladder slipped, did it?   A. Yes, sir.   Q. Was it placed against a beam?   A. No, sir; it was a step-ladder.   Q. This accident was the result of your being caught either by the pulley or belt or shaft, the first accident?   I understand you to say you don't know how it occurred?   A. I was unconscious.   Q. But it happened by reason of your being caught on either the shaft or pulley or belt?   A. Yes, sir."   Referring to the accident complained of, which occurred nearly two years after the first accident, the witness testified as follows: "Q. You

knew that you couldn't stop that pulley by your hand, by holding it? A. I did. Q. You knew also that you couldn't stop the shaft that was revolving? A. Yes, sir. Q. And you knew that if you attempted to stop it you would be hurt? A. Yes, sir. Q. And you knew if your clothing or anything got attached to the belt, it would pull your clothing, didn't you? A. Yes, sir. Q. And if you got attached to the shaft it would pull your clothing, too? A. Yes, sir. Q. And that you would get hurt? A. Yes, sir." We find similar questions and answers in reference to the pulley and set-screws. He testified also that he knew how a ladder ought to be placed and that if it was placed right it would not slide. This examination took place more than four years after the accident, and it is quite likely that the added knowledge and wisdom of the intervening time is somewhat reflected in the answers of the witness. Regardless of this, however, it would be surprising if he had shown ignorance of these things. He did not need the painful experience of the former accident to teach him that it was dangerous to come into contact with the pulley or the belt or the screws or the shaft, or that a ladder not properly placed is likely to slip. To obtain this knowledge the ordinary boy of fourteen or fifteen or even younger would require much less time in the shop than was spent there by plaintiff. Indeed, most active boys of that age, enjoying the advantages of observation and education afforded in our cities are cognizant of these mechanical devices and of the simple elements of physics that are involved in their use and operation. We would be surprised to find upon the street a boy of fourteen who would declare that he did not know that if he mounted a long ladder that was placed almost perpendicularly and not braced he was likely to fall, or that if, by the sliding of the ladder, he was thrown upon a belt or shaft moving with great rapidity, injury would probably result to him. The Socratic method of the examination was admirable and it revealed an intelligent and candid witness, but the conclusion that his answers required the withdrawal of the question of negligence from the jury is opposed to the principle enunciated in well-considered cases and is the result of a failure to give due prominence to certain significant features of the occasion. These circumstances, briefly stated, are the complexity of the situation, the fact that

plaintiff was a minor and presumably without the judgment of an adult, that he was ordered by his superior to do the work which was outside of and more hazardous than his usual employment, that he was expected to and did obey promptly and that he had a right to assume that the ladder was placed with due regard for his safety. In view of these incidents, we think it cannot be said as a matter of law that no other rational inference can be drawn than that plaintiff was guilty of contributory negligence.

In determining the question what is ordinary care on the part of an individual, of course, "all the circumstances of his position should be regarded, including, in cases like the present, the servant's orders, the demands of his duty, the apparent risk to be met, and the purpose of his action, no less than his physical surroundings." And, as further stated by Labatt, section 4400: "A second principle which is especially important in cases where the servant was injured as a result of his compliance with a direct order, and which naturally suggests itself as a material element under such circumstances, is that a servant is not necessarily negligent where he acts upon the presumption that his employer, and his employer's agents have done, are doing and will do their duty. . . . The juridical theory is that the order, having a natural tendency to throw the servant off his guard, may properly be considered to excuse him from the exercise of the same degree of care as would have been incumbent on him if the case had not involved this factor."

All the authorities, also, emphasize the importance of the distinction between adults and those of immature judgment. Referring to minors, Thompson, in his work on Negligence (sec. 4093), says: "The master is here, as in every other case, bound to act reasonably and justly; and this rule requires him to give suitable warning and instructions to a minor employee in regard to any danger, whether open or concealed, where the danger is not sufficiently obvious to the intelligence or experience of the employee, in the exercise of ordinary care on his part—this care being measured by the maturity of his faculties and the amount of his experience." And, in section 4094: "This rule applies not only so far as to require the employer to give general warnings and instructions to minor employees as to the dangers attending the duties they

are expected to perform, but there is also a special duty resting upon the employer of giving instructions as to any new dangers whenever he orders the minor employee into a *new situation* which, without such warning and instruction, may be dangerous to him.''

It is, no doubt, true, as the learned author says, that ''We meet with confusing and contradictory ideas growing out of the opposing tendencies of the minds of judges,'' and he cites a large number of cases from various jurisdictions illustrating this difference, but the apparent want of harmony arises rather from an application of the law to the peculiar facts than from disagreement as to the law itself. All the courts are in concord as to the doctrine that where reasonable men may differ as to the proper inference to be drawn from the facts a case is presented for the determination of the jury.

While the circumstances, of course, are variant, the action of the lower court in holding that the question of negligence was one for just and candid disputation is, we think, within the *rationale* of the decisions of the appellate courts of this state.

In *Ingerman* v. *Moore,* 90 Cal. 410, [25 Am. St. Rep. 138, 27 Pac. 306], it was held that ''Where it appears that an employee in a sawmill was seriously injured while running a scantling machine and saw, in attempting to remove slivers from under the saw, by reason of his sleeve catching on a concealed set-screw fixed upon and projecting from a shaft below the saw, the fact that he had been employed in the mill for nearly two years, and had been working as assistant on the scantling machine, in putting the lumber in place to be cut by the saw, for about nine months, and had, during that time, in the absence of the foreman, run the machine for eighteen days, does not warrant the appellate court in saying, as matter of law, that he was experienced in the work he was doing, and had knowledge of the set-screw, and of the danger of placing his hand where he did while the machine was running, but his experience, and knowledge of the machine, is a question of fact for the jury.'' The concealed set-screw was the controlling factor in that case, but the rule was approved as enunciated in *Coombs* v. *New Bedford Cordage Co.,* 102 Mass. 585, [3 Am. Rep. 506], as follows: ''Whether is was possible for the plaintiff to have met with

the accident from inadvertence or want of acquaintance with the danger of his position without being chargeable with a want of reasonable care, we think is a question to be submitted to the jury. The facts that he saw, or might have seen, the machinery in motion, and might have known that it was dangerous to expose himself to be caught in it, are considerations which should be regarded on one side. On the other, some allowance should be made for his youth, his inexperience in the business, and for the reliance which he might have placed upon the direction of his employers. It has been held in other cases that previous knowledge of a danger is not conclusive evidence of negligence in failing to avoid it.''

In *Mansfield* v. *Eagle Box etc. Co.*, 136 Cal. 622, [69 Pac. 425], the plaintiff was injured while operating a rip-saw in a box factory. He was between eighteen and nineteen years of age and had worked in the factory some fifteen months before he was hurt, although having had little experience in running the rip-saw—that was not his job, but when short of help the superintendent made the plaintiff run the saw on which he was hurt. He was engaged in cutting boards when the accident occurred. With his hand he was pushing a board on a table against and under the saw, which turned with a downward whirl toward him, when it seems the board slipped and his hand was caught by the saw. The court said: ''Common prudence demanded that this inexperienced young man, commanded to work with a dangerous machine, with which he was not at all familiar, should have been fully and specifically instructed in the safest methods of doing the work. To put him to work without these instructions was negligence, and a jury might well have concluded from the facts in evidence that plaintiff's crippled hand was the proximate result of such negligence.'' No doubt, if categorically questioned, the plaintiff in that case would have answered that he knew a rip-saw was a dangerous implement and that if his hand came into contact with it while in motion he would get hurt, and, furthermore, that a board might slip or get caught in such a way as to throw his hand against the saw, as any intelligent youth of his age and experience would have some knowledge of these things, but the court properly held, under the circumstances, that it was proper for the jury to determine whether, on account of its failure to caution and

instruct him as to the best method of operating the saw, defendant was legally liable for plaintiff's injuries.

In *Clark* v. *Tulare Lake Dredging Co.*, 14 Cal. App. 414, [112 Pac. 564], it was held by this court, in a case wherein a bright boy of sixteen and a half years lost his life, that "the burden was upon the defendant to show that those in authority over the dredger not only warned the boy of the danger attendant upon the discharge of the duties of a 'deck hand' having charge of the principal machinery of the dredger, but also to show that if such warning was given it was so given that the deceased fully appreciated and realized the danger by which he was surrounded." Therein many cases are cited, which may be consulted with profit, illustrating the principle so aptly stated in *Foley* v. *California Horseshoe Co.*, 115 Cal. 184, [56 Am. St. Rep. 87, 47 Pac. 42], that "The conduct of minors is to be judged in accordance with the limited knowledge, experience and judgment which they possess when called upon to act, and it must, from the nature of the case, be a question of fact for the jury, rather than of law for the court, to say whether or not, in the performance of a given task, the child duly exercised such judgment as he possessed, taking into consideration his years, his experience and his ability."

We deem it unnecessary to notice other citations of respondent, wherein, with no stronger showing than this, it was held that a case was presented for the jury. Indeed, the number of circumstances here that might properly be considered factors in the perilous situation, emphasized with peculiar force the imperative duty of defendant to warn and instruct plaintiff. Their relative importance we may not be able to determine, we cannot say how much each contributed to the injury, but it is reasonably certain that the fact that plaintiff, a minor and somewhat crippled from a prior accident, in an emergency, was directed in a peremptory manner by his foreman to do a special perilous task outside of his ordinary employment in a place rendered dangerous not only by its location and the position of the ladder but by the rapid movement of the machinery and the presence of the projecting set-screws, presents a case quite unusual in its cumulative effect in favor of respondent's position.

Many special issues were submitted to the jury and the answers to certain ones furnish to appellant the ground of an objection that some are indefinite and inconclusive and that others are entirely inconsistent with the general verdict. In their construction the rule is undoubtedly as stated by Clementson in his work on Special Verdicts, pages 131 and 139: "Special findings should, if possible, be so construed as to harmonize them with each other and with the general verdict," and special findings will not control unless they exclude every theory which will sustain the verdict and "are inconsistent only when, as a matter of law, they will authorize a judgment different from that which the verdict will permit."

Respondent, in his brief, sets out all the special verdicts with categorical answers, from which it appears, as claimed by him, that the jury positively answered questions which covered all the material issues of the case, viz.: "That plaintiff was inexperienced; that he did not appreciate the dangers of his task; that his task was dangerous; that defendant did not instruct him as to the danger; that defendant failed to use ordinary care to instruct him as to such danger; that plaintiff's injury was caused by the negligence of defendant; that defendant knew that plaintiff was inexperienced; that plaintiff was injured by the accident; that such injuries were permanent; and that plaintiff did not have sufficient intelligence and understanding, in view of all the facts of the case, to know the danger of his task." Other questions, covering a part of the same ground, were answered: "We believe so," "Not according to the evidence," "We think not," "The preponderance of the evidence answers affirmatively," and "No, we think not." The duplication arose from the fact that the court submitted questions proposed by both plaintiff and defendant. The court might better have rejected some of the questions, but it is perfectly apparent that thus far no inconsistency is shown, nor anything of which appellant can complain. In other words, the jury having answered positively that the defendant was negligent, the finding would not be affected nor would either party be prejudiced by the answer to another question of the same import that "The preponderance of the evidence answers affirmatively" or "We believe so." The same thing is manifestly true as to the questions

answered in the negative. For instance, the jury gave the categorical answer, "No," to this question: "Did defendant instruct plaintiff as to the proper manner of safely applying compound on a belt, while mounted upon a ladder, in proximity to a revolving shaft with set-screw couplings?" And another similar question was answered, "Not according to the evidence."

Other questions and answers to which appellant apparently attaches more importance are as follows: 1. "Q. What was the proximate cause of the accident and injury complained of by plaintiff? A. The proximate cause of the accident and injury lay in the fact that the boy was ordered to do a duty outside of his regular work, and was caught by the revolving shaft and set-screws." 2. "Q. Was plaintiff's injury due to the failure of defendant to warn or instruct plaintiff as to the danger of his employment? A. It seems to be due to the defendant's failure to warn plaintiff and the fact that he was doing something outside of his regular work." 3. "Q. Was the accident and injury complained of caused by the negligence of the defendant in furnishing a defective ladder for the use of plaintiff? A. We believe the ladder should have had spikes and hooks." 4. "Q. Was the accident and injury complained of caused by the negligence of defendant in operating the shafting and coupling described in the amended complaint with projecting screws? A. We so believe." As to the foregoing, it may be said generally that, considering the number and character of the questions submitted to the jury, it is surprising that the answers are not confusing and it is clear that, when properly construed, they are entirely consistent with the general verdict. No. 1 should not have been submitted and it should be disregarded, as it involved a question of law. "To permit the jury to return conclusions of law rather than statements of fact would defeat the manifest purpose of the statute. Such conclusions are to be disregarded. They cannot be considered in determining the sufficiency of the verdict." (Clementson, p. 116.) Again, it is quite apparent that the jurors were not accustomed to the refinements of the law, and being men, presumably, of average intelligence and disposed to look at a question from a practical common-sense standpoint, they naturally concluded that various circumstances contributed to the injury and they

so expressed themselves. They very properly believed and substantially found that the fact ''that the boy was ordered to do a duty outside of his regular employment,'' that ''he was caught upon a revolving shaft with set-screws,'' and that ''defendant's failure to warn plaintiff'' should all be considered as important elements in determining the question of negligence. And the jurors were right in that. It is true that they did not make the distinction that is pointed out by Mr. Justice Henshaw, in *Merrill* v. *Los Angeles Gas & Elec. Co.*, 158 Cal. 503, [139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 536], between ''the proximate cause of the law'' and ''the proximate cause of the logician'' or ''the proximate cause in fact.'' As said therein: ''Moreover, the proximate cause of the law is not the proximate cause of the logician, nor even always in strictness the proximate cause in fact, and a jury may easily be confused and misled by over-niceties in these abstractions.'' The jury is not expected or required to make these fine distinctions. They are often difficult enough for the courts. Probably, the responsibility of defendant for the injury is legally and primarily due to its failure to warn plaintiff of his danger but there would have been no liability, of course, if no injury had occurred, and the jury were justified in finding that there would have been no injury had it not been for the other circumstances hereinbefore stated. The intimate relation of these various facts and concepts is too apparent to require further comment. The situation will occasion no embarrassment if we keep in view and apply the rule that ''All presumptions are in favor of the general verdict for the plaintiff, which determines all issues in his favor, including the question of contributory negligence, where there is evidence to support it; and it must control, if the special verdict is not absolutely irreconcilable therewith.'' (*Antonian* v. *Southern Pacific Co.*, 9 Cal. App. 732, [100 Pac. 877].)

The instructions seem to have covered every phase of the legal propositions involved in the case and we find in them no substantial error. The concluding clause of one, to which appellant objects, is as follows: ''I charge you that, as to the degree of care to be exercised by the servant, you may consider the fact, if such be the fact, that such servant was acting under the direct order of his employer.'' This does not

imply that the plaintiff was relieved of the duty to exercise care if he was acting under the direction of his employer. The circumstance of the order given by the foreman was a very important consideration, as we have already seen, and it had a just and legal bearing upon the degree of care required of the servant and it was proper for the court to so instruct the jury. ''The fact that the servant, at the time he was injured, was complying with a direct, specific, personal order of his master, or his master's representative, has, it is well settled, a material bearing upon the question whether he can hold the master responsible. Broadly speaking, the evidential significance of this fact will be found to be simply this: That as it goes to show that the servant's ignorance of the risk to which his injury was due is excusable, or that his action was not entirely voluntary, it tends to negative the availability of the various defenses which are essentially dependent upon proof that the servant voluntarily encountered a danger which was, or ought to have been, comprehended by him.'' (Labatt on Master and Servant, sec. 433.)

''It is quite obvious that the fact that the servant has been ordered into a position of danger by his master or superior is an element to be considered in determining whether he has exercised ordinary care.'' (Thompson on Negligence, sec. 5379. See, also, Labatt, sec. 439, and 26 Cyc., pp. 1221, 1245 and 1272.)

Objection is also made to the following instruction: ''If you find that the task at which the plaintiff was working when the accident occurred was, under all the circumstances of the case, one of special danger, then I charge you that such knowledge of danger as plaintiff may have acquired at the usual tasks of his employment does not necessarily raise the presumption that he knew of such special danger. A servant directed to undertake work outside of that which he is engaged to do, is not presumed to be aware of its peculiar risks, and therefore if the master does not fully explain them to the servant before putting him at such new work, the servant is entitled to assume that it has no greater risk than those which attach to his regular work.'' This manifestly does not assume that there was any special danger as the instruction is hypothetical in that respect. It does not assume that plaintiff's only source of knowledge was that acquired from his usual tasks

nor does it imply that the employer was called upon to fully explain the danger regardless of any knowledge that the plaintiff may have had.   As pointed out by respondent, the meaning conveyed was "that the plaintiff cannot be charged with knowledge of special dangers outside of his regular employment, by reason of knowledge acquired at his usual tasks, and that if the master does not explain such special dangers to him, he is entitled to assume that there are no greater risks attached to such special dangers than those which attach to his regular work."   If there was any likelihood that the jury would misconstrue the instruction in the manner suggested by appellant, it was completely obviated by reason of other clear directions as to the duty of plaintiff to use whatever knowledge he may have derived from any source.

Some criticism is made of two or three other instructions but we do not think it merits special attention.   It may be said, also, that, after an examination of the rulings complained of as to the admissibility of evidence, it appears reasonably certain that if any of them was erroneous the result could not possibly have been affected thereby to the prejudice of appellant.

We think no sufficient reasons exist for interference with the action of the lower court and the judgment and order are therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 28, 1913, and the following opinion then rendered thereon:

BURNETT, J.—In its petition for rehearing, appellant manifests a degree of disappointment that in the original opinion we failed to discuss specifically some of the assignments of error as to the instructions.   The constraint of custom and propriety as to the elaboration of judicial opinions, no doubt, is quite obvious to the learned counsel, and we think it is hardly necessary to assure them that we examined, as carefully as we could, not only the exhaustive briefs but the whole of the transcript in the case.   Our conclusion, however, was and is that, viewing the entire record, we cannot say that any prejudicial error was committed.

This much we have added in consequence of the respectful attitude of appellant and the admirable presentation, both in matter and method, by appellant's counsel of their contentions.

The petition is denied.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 28, 1913.