READ *v.* CITY AND SUBURBAN RAILWAY COMPANY.

1. When a street-railway company with reasonable promptness discovers the sagging of one of its trolley-wires, which has been unexpectedly caused by the falling of a wire belonging to another, and immediately takes proper steps to prevent its wire from causing injury to travelers in the street over which the same is suspended, the company meets the legal requirements as to diligence under such circumstances.
2. Notice to the servant of a corporation, with respect to a matter over which he has no authority and as to which he has no duty to perform, is not notice to the corporation.
3. Every person must exercise due diligence in protecting himself from danger, and, failing to do so, must take the consequences.
4. The negligence of a servant in failing, while driving his master in a vehicle, to avoid danger is imputable to the latter.

Submitted March 1, — Decided April 28, 1902.

Action for damages.   Before Judge Norwood.   City court of Savannah.   August 30, 1901.

*O'Connor, O'Bryne & Hartridge,* for plaintiff.
*Osborne & Lawrence,* contra.

LUMPKIN, P. J.   At the October term, 1899, of this court, a judgment of the lower court granting a nonsuit in this case was reversed and the case remanded to the court below for further proceedings.   110 *Ga.* 166.   A trial was had therein at the July term, 1900, resulting in a verdict for the defendant; and Read, the plaintiff, is now here complaining of a judgment overruling his motion for a new trial.   It appears that he was injured at the intersection of Congress and Whitaker streets, in the city of Savannah, by a sagging wire of the defendant company, with which he came in contact while being driven along the street first mentioned, by his servant.   The petition alleged that the company was negli-

gent "in allowing said wire to hang too low and in not keeping it in its proper place and in a safe condition." By an amendment to the petition it was alleged that, through the negligence of the company, its trolley-wire had been allowed to break in the neighborhood of St. Julian and Whitaker streets, "thus causing said overhead wire to sag at the corner of Congress and Whitaker streets," in which position it was a source of danger to travelers using Congress street; and, further, that the company negligently failed "to place or station a watchman or guard at said intersection of Congress and Whitaker streets for the purpose of warning pedestrians and travelers of the proximity of a dangerous instrument." The evidence was voluminous and in many respects conflicting, that introduced in behalf of the plaintiff being, as was held when the case was here before, sufficient to warrant a verdict in his favor. On the other hand, the testimony upon which the company relied tended to show that the sagging of the wire was the result of a sudden and unexpected breaking of a trolley-wire belonging to another company; that the defendant was duly diligent in discovering the condition of its wire across Congress street; that its employees gave warning to the plaintiff and his driver, as they were approaching this wire, of the danger they were about to encounter, and that this warning was wholly disregarded. There are many grounds in the motion for a new trial, but the only material points thereby presented are those dealt with below. In discussing these, such additional facts as it may be necessary to mention will be stated.

1. Complaint is made of several charges of the court to the effect that if the sagging of the defendant's wire was caused by the falling of a wire belonging to another company, and the occurrence was one of an unusual nature not ordinarily and reasonably to have been expected, and the defendant immediately upon discovering that its wire was sagging sent an employee to place it in proper position, and the plaintiff was injured before the defendant had a reasonable time within which to make the necessary repairs or to take precautions to warn travelers passing along Congress street, the company would not be liable. As is apparent, these instructions were in accord with well-settled rules of law governing cases of this character.

2. The court, among other things, charged the jury as follows: "If you find that the duties of the motorman and conductor were

confined to the running of their car and the reporting of accidents, then notice to them of the sagging of the wire was not notice to the company ; and if you further find that the accident was due to an uncommon or unusual cause, and that before its officer had a reasonable opportunity to give instructions the motorman and conductor went to the Congress street crossing to guard the crossing, then whether they did what they should have done in the way of warning Dr. Read and his driver or not, the plaintiff can not recover, and it will be your duty to find for the defendant, because under such circumstances what they did was of their own accord, and if there was any default upon their part, it can not be charged to the defendant ; for if the accident occurred from an unusual and uncommon cause, the occurrence of which might not reasonably have been expected, no duty arose upon the part of the defendant until those of its officers and agents in authority had notice of the accident and reasonable time thereafter to take precautions against any resulting danger." Exception was taken to this and another charge to the same effect. There was no complaint that these instructions were not warranted by the evidence, but the contention of plaintiff's counsel is that, as matter of law, without regard to the duties which, as between the company and the motorman and conductor, they were required to perform, notice to them of the sagging of the wire would be notice to the company. In this view we can not concur. Indeed, the principle of law applied in the case of *City of Columbus* v. *Ogletree,* 96 *Ga.* 177, is controlling here, as will appear from an examination of a number of the authorities cited in support of the decision then announced. It was in that case held that: " It not having been shown that the duty of looking after and reporting the condition of the streets and sidewalks of the city devolved upon its policemen, it was error to charge that notice to 'the police' of the defective condition of a particular street or sidewalk would be notice to the municipal corporation." So, in the present case, if it was not within the scope of the duties of the motorman and conductor to immediately take steps to guard the public from the danger created by the sagging of the company's trolley-wire, it would not be proper, in determining whether, after the defendant became informed of the emergency to be met, it acted with reasonable diligence in taking proper steps to protect travelers passing along the street, to regard notice to the motorman and conductor

as notice to the company itself, and thus place upon it the unreasonable requirement of taking action in the premises before any of its officers or agents who were authorized to act in its behalf had received information of the necessity to do so.

3, 4. There was evidence to show that as the plaintiff's vehicle was approaching the sagging wire, employees of the company gave to him and to his driver repeated and vociferous warnings of the danger ahead, which were either unheard or ignored, and that these warnings were such as to have necessarily attracted the attention of an ordinarily prudent man. In this connection the court charged that if due warnings were given which the plaintiff or his servant ought, in the exercise of ordinary care and prudence, to have heard and heeded, the plaintiff would be precluded from recovering. The court further instructed the jury that if, in the exercise of ordinary diligence, the driver could, by turning to the right or left, have avoided coming in contact with the wire, the plaintiff could not recover. We do not care to discuss these instructions at length; for it is obvious that the court correctly stated the time-honored doctrine of contributory negligence, and its application to a case like this, and the further ancient rule of law that, under such circumstances as those stated, the negligence of the servant is imputable to his master.

*Judgment affirmed. All concurring, except Lewis, J., absent.*