[Civ. No. 4201.  Second Appellate District, Division Two.—March 17, 1924.]

## C. E. COMER, Respondent, v. LOS ANGELES RAILWAY CORPORATION (a Corporation), Appellant.

[1] NEGLIGENCE — BROKEN TROLLEY WIRE — INJURY TO AUTOMOBILE DRIVER — CONDUCT OF CONDUCTOR — INSTRUCTIONS — In an action for damages for personal injuries sustained by plaintiff, and for damage to his automobile, by running into a broken trolley wire of defendant railway company, an instruction that "If you find that as a matter of fact plaintiff was driving his automobile southerly on the west side of west car track in an ordinarily prudent manner, and that his route therein was, so far as the down trolley wire was concerned, safe and unobstructed for him to travel straight ahead, then I charge you that if you further find that the conduct of the conductor was such that it made plaintiff, without fault on his part, change out of his safe course into and against defendant's electric wire, then the plaintiff should recover against the defendant . . . unless you further find that the plaintiff could, by the use of ordinary care, have avoided the said wire," is erroneous, in that it virtually assumes that any conduct on the part of the conductor which caused plaintiff to change his course and run into the wire would be conclusive proof of negligence.

[2] ID. — RAILWAY COMPANY NOT INSURER — PROVINCE OF JURY. — In such a case, the defendant is not an insurer and is not liable unless there is negligence; and the question whether there was or was not negligence is an ultimate fact which should be left for the determination of the jury from a consideration of all the probative facts in evidence.

[3] ID.—CONTRIBUTORY NEGLIGENCE — EVIDENCE — NONSUIT. — In this action for damages for personal injuries sustained by plaintiff, and for damage to his automobile, by running into a broken trolley wire of defendant railway company, although there was

---

2.  See 25 R. C. L. 1238.
3.  See 3 Cal. Jur. 839; 25 R. C. L. 1265.

evidence of contributory negligence on the part of plaintiff, there also having been evidence tending to' show that plaintiff was not negligent, the court properly denied defendant's motion for non-suit.

[4] ID.—KNOWLEDGE OF EMPLOYEE—DUTY OF PRINCIPAL.—In such action, it is error to instruct the jury, as a matter of law, that as soon as defendant, through its motorman and conductor, knew that its trolley wire had broken and fallen into the street, thereby rendering travelers liable to injury, it was defendant's duty through its agents in charge thereof to notify persons rightfully using the street, and that failure to do so would constitute negligence, in that the knowledge of the motorman and conductor was knowledge of the corporation.

[5] ID.—EMPLOYER AND EMPLOYEE—NOTICE.—The relationship of employees to their principal may be so varied by the hiring, the rules and regulations of the company, and working conditions, that it cannot be said that from every state of facts it is their duty in good faith and the exercise of ordinary care and diligence to communicate to the proper department all knowledge of any situation which may threaten injury or prove to be dangerous.

[6] ID.—KNOWLEDGE OF DANGER—INSTRUCTIONS.—In this action for damages for personal injuries sustained by plaintiff, and for damage to his automobile, by running into a broken trolley wire of defendant railway company, a fair construction of the instructions, given at the request of plaintiff, that plaintiff had a right to assume "that the street was in a reasonably safe condition for his travel," and "that no trolley wire of defendant . . . was down in or upon the street that would interfere with his reasonably safe travel . . . until he had actual knowledge that the wire was down, or had such notice that an ordinarily prudent person would have known that the wire was down," and that if "the conduct, whatever it was, of the conductor was such that an ordinarily prudent person would not have known he meant the wire was down, or that there was danger in the plaintiff traveling there . . . that plaintiff had no notice, so far as the acts of the conductor were concerned, as to there being any danger in traveling along the street at the time and place of accident," made it clear that plaintiff was guilty of contributory negligence if he had actual knowledge of the danger or such knowledge as would constitute notice to an ordinarily prudent person that the wire was down; and this was a correct statement of the law.

(1) 36 Cyc., p. 1638; 38 Cyc., p. 1651 (1926 Anno.).   (2) 20 C. J., pp. 341, 390, secs. 35, 67; 36 Cyc., pp. 1499, 1621.   (3) 36 Cyc., p. 1622.   (4) 20 C. J., p. 395, sec. 69; 36 Cyc., p. 1638.   (5) 2 C. J., p. 864, sec. 544.   (6) 20 C. J., p. 397, sec. 69; 36 Cyc., p. 1641.

4.  See 1 Cal. Jur. 846; 21 R. C. L. 838.

APPEAL from a judgment of the Superior Court of Los Angeles County.  J. L. Fleming, Judge *pro tem.*  Reversed.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher and Norman S. Sterry for Appellant.

E. B. Drake for Respondent.

CRAIG, J.—Respondent suffered personal injuries and damage to his automobile by running into a broken trolley wire of appellant, while driving in a southerly direction on Vermont Avenue, in the city of Los Angeles.  Defendant appeals from the judgment against it, and in doing so relies principally upon alleged error of the trial court in the giving of certain instructions and refusing others asked. It is also claimed that the evidence is insufficient to sustain the verdict.

It appears that as a street-car had passed under it the trolley wire above the south-bound track became severed at a point some distance south of the intersection of Vermont Avenue with Tenth Street, and that a considerable portion of the wire lay between the tracks.  The car stopped, and while the motorman was adjusting his trolley and sweeping the wire over against one of the rails, the conductor attempted to warn the drivers of approaching vehicles; there was much travel upon the street, and although several people were signaled, the respondent did not see the conductor until almost upon him, when respondent suddenly swerved to the left to avoid striking him, and hit the wire. It was after dark, and respondent's headlights were burning; he saw the car, but from the fact that it was not at a crossing he paid little attention to it, intending to drive down past it on the right-hand side.  He testified that he saw a person dart out before him, as from the gutter, and that he thought someone was hailing him for a ride; that he had money with him, and was in a hurry, and that he would not have taken on a passenger, but that he immediately jumped on his brake and clutch with both feet; that there was at once a flash, and a mass of flame and sparks about him, whereupon it seemed as though he were dealt a blow

on the back of the neck, and he next found himself in the street, and saw his automobile moving away with the wire hanging across it.

After the wire fell it sputtered and squirmed around, subsequently becoming welded to a rail of the track, and there was testimony that it got very hot, first turning red, then white. The conductor testified that it was five or six minutes from the time his car first went dark and he discovered the broken wire until respondent's accident; that until the accident happened he had not looked up at the wire, but that here was a reflection on the pavement, and he was conscious of a glow; other witnesses testified to having seen light from the wire before the collision, while still others said that it did not extend far along the wire, and that there was not much light given off. Respondent stated positively that it did not give off any light, and that he did not know the wire was down until he struck it with his machine, when "everything lit up."

At appellant's request the jury were instructed that there was no duty imposed upon defendant's employees to give any warning of the presence or position of the broken wire after it had become sufficiently illuminated so that any person traveling on the street could have seen it by the exercise of ordinary care, and that if they believed that the wire at the time of the accident was sufficiently bright or glowing that the plaintiff by the exercise of ordinary care could have seen and known of its presence and position in time to have avoided the collision, they must return a verdict for the defendant.

From a careful reading of the record before us, and summarizing the many exhaustive instructions given on behalf of appellant, it may fairly be concluded that in rendering a verdict for respondent the jury must have concluded that a preponderance of the evidence showed that after the wire broke defendant's motorman and conductor had a reasonable opportunity to cause the plaintiff to avoid the accident, but did not do so; that the wire was not of sufficient brightness so that the plaintiff by the exercise of ordinary care could have seen it and known of its presence or position; that the conductor did not use the care and caution that an ordinarily prudent person in his position would have exercised; that the plaintiff was not guilty of

contributory negligence, and that because of the foregoing facts the conduct of the conductor made plaintiff change out of his safe course into and against defendant's electric wire, and that, therefore, the company was liable. Conceding that these findings of fact were supported by the evidence, instruction number XIX directed this conclusion if the jury should so find, and is not in accord with our view of the law.

[1] The jury were therein charged that: "If you find that as a matter of fact plaintiff was driving his automobile southerly on the west side of the west car track in an ordinarily cautious and prudent manner, and that his route therein was, so far as the down trolley wire was concerned, safe and unobstructed for him to travel straight ahead, then I charge you that if you further find that the conduct of the conductor was such that it made plaintiff, without fault on his part, change out of his safe course into and against defendant's electric wire, then the plaintiff should recover against the defendant in this case, and you should find damages in his favor as defined in these instructions, unless you further find that the plaintiff could, by the use of ordinary care, have avoided the said wire." This instruction, we think, was erroneous in that it virtually assumed that any conduct on the part of the conductor which caused plaintiff to change his course and run into the wire would be conclusive proof of negligence. [2] The defendant was not an insurer and was not liable unless there was negligence; and the question whether there was or was not negligence was an ultimate fact which should have been left for the determination of the jury from a consideration of all the probative facts in evidence. Merely causing plaintiff to change his course and run into the wire was not conclusive proof of the ultimate fact of negligence, because it was not necessarily inconsistent with the exercise of due care by °the conductor. It was a probative fact merely tending to show negligence, and which was not within the province of the trial court to decide. (*McKeon* v. *Lissner,* 193 Cal. 297 [224 Pac. 965].)

[3] We do not agree with appellant's contention that the court erred in refusing to grant its motion for nonsuit, or to give the peremptory instruction directing a verdict for defendant. In *Reaugh* v. *Cudahy Packing Co.,* 189 Cal.

335 [208 Pac. 125], it was held that "contributory negligence is a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury." In view of the contradictory testimony above outlined, we are not at liberty to say that the evidence of contributory negligence was "conclusive," since there was evidence tending to show that the plaintiff was not negligent. (*Rolland* v. *Porterfield,* 183 Cal. 466 [191 Pac. 913]; *Lanning* v. *Talmage, ante,* p. 48 [225 Pac. 25].)

[4] Appellant also attacks an instruction wherein the jury were charged that as soon as the defendant, through its motorman and conductor, knew that its trolley wire had broken and fallen into the street, thereby rendering travelers liable to injury, it was defendant's duty through its agents in charge thereof to notify persons rightfully using the street, and that failure to do so would constitute negligence, in that the knowledge of the motorman and conductor was knowledge of the corporation. It was testified upon the trial that appellant's car system was under the management of different departments, each separate and distinct from the other; that the wires were under control of the line department, while the motorman and conductor were members of the operating department, and that there was some evidence from which it is argued that these departments were so independent of each other that the line department might not be apprised of difficulties encountered by operatives until notified by the superior to whom it was the duty of the conductor to report. Appellant's amended answer alleged that "at the time of the breaking of the wire a passing south-bound street-car stopped and the conductor in charge thereof went to the north to warn approaching traffic from the north of the breaking of said wire, and the said conductor gave due warning and notice to the said plaintiff of the broken wire," and, "that as soon as the wire was broken the defendant, through its servants and agents, undertook to and did give the plaintiff ample notice and warning"; and "defendant denies that it had time or opportunity to give any other or further or different notice than it did give to the said plaintiff, but alleges that if the said notice to him was not sufficient it was because defendant had no

opportunity to give a further or different notice." The conductor testified that he assumed it was incumbent upon him to give alarm, and that he felt that it was his duty to prevent people from being injured, although he had no specific instructions to do so. Appellant cites *Read* v. *City & Suburban Ry. Co.*, 115 Ga. 366 [41 S. E. 629], which holds that notice to the servant of a corporation with respect to a matter over which he has no authority and as to which he has no duty to perform is not notice to the corporation. It was there held that under the circumstances shown by the evidence the motorman and conductor acted of their own accord in guarding the crossing. If that opinion be construed to have universal application to street-car companies, it is the only holding of its kind that has come to our attention, and seems to be contrary to the general trend of authorities. In *Canton Cotton Warehouse Co.* v. *Pool,* 78 Miss. 147 [84 Am. St. Rep. 620, 28 South. 823], it was held that the inquiry as to the liability of the master or principal is whether, from the nature of the act itself, as actually done, it is an act done, in the master's business, or one wholly disconnected therefrom by the servant, not as a servant, but as an individual on his own account. As was said in *McDonald* v. *Randall,* 139 Cal. 246, 250 [72 Pac. 997, 998]: "That a corporation is not chargeable with the knowledge of one of its officers or agents who is acting on his own behalf, and not for the corporation, is beyond question the law." And in *Brimberry* v. *Duffield Lumber Co.,* 183 Cal. 454 [191 Pac. 894], it was said that the company must be held responsible unless it clearly appears that the servant could not have been, directly or indirectly, serving it in an act the negligent performance of which caused injury. Section 2332 of the Civil Code provides: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." It might well be that a person on the street, under no legal duty to the street-car company or to the public, would under the circumstances have felt that it was his duty to prevent people from being injured, yet we do not feel convinced, considering the fact that much evidence upon the subject was offered to the jury, that the trial court was justified in charging them as a matter of law

upon the question of knowledge. **[5]** The relationship of employees to their principal may be so varied by the hiring, the rules and regulations of the company, and working conditions that it cannot be said that from every state of facts it is their duty in good faith and the exercise of ordinary care and diligence to communicate to the proper department all knowledge of any situation which may threaten injury or prove to be dangerous. Such a conclusion results from facts and circumstances which of necessity differ, and it is therefore more a question of fact than of law.

**[6]** Appellant asserts that the trial court committed error in giving plaintiff's instruction numbered VI, as follows: "You are instructed that the plaintiff, as he drove along South Vermont Avenue at and about the place of accident, had a right, in law, to assume that the street was in a reasonably safe condition for his travel, and further had a right to assume that no trolley wire of defendant, or any other obstruction, was down in or upon the street that would interfere with his reasonably safe travel, and he had a right, in law, to indulge this assumption until he had actual knowledge that the wire was down, or had such notice that an ordinarily prudent person would have known that the wire was down and that there was danger therefrom, and, unless you find by a preponderance of the evidence of the whole case that plaintiff had this knowledge or notice, then he was not guilty of contributory negligence in not knowing that the wire was down." And also number VIII, which reads: "Although you may believe that the conductor of the defendant attempted to give the plaintiff notice that there was danger if he proceeded in the route he was going, yet if you further find that the conduct, whatever it was, of the conductor was such that an ordinarily prudent person would not have known he meant the wire was down, or that there was danger in the plaintiff traveling there, then you will find that the plaintiff had no notice, so far as the acts of the conductor were concerned, as to there being any danger in traveling along the street at the time and place of accident, except the danger of striking the conductor pursuing the course he was then traveling."

It is claimed that by these two instructions the court virtually eliminated from the consideration of the jury the question as to whether or not the plaintiff should have

known of the broken wire in time to have avoided colliding with it. We do not think this criticism is well founded. A fair construction of these instructions would make it clear that the plaintiff would be held guilty of contributory negligence if he had actual knowledge of the danger or such knowledge as would constitute notice to an ordinarily prudent person that the wire was down, and this we conceive to be the correct statement of the law.

It is also contended that the trial court should not have instructed the jury that there was no evidence proving or tending to prove that the motorman in any sense attempted to warn the plaintiff or any persons that the wire was down. It is conceded that there was no evidence to that effect, but it is argued that the instruction was erroneous nevertheless, because the jury might have drawn the inference from it that a duty devolved upon the motorman to give warning to the public that the wire was down. We do not think that from the context of the instructions as a whole such statement can be said to have been used for any purpose other than to limit the evidence to acts of the conductor, but since the case must be reversed for the reasons herein stated, the trial court may so frame its instructions upon another trial as to eliminate doubt in this respect.

The judgment is reversed.

Finlayson, P. J., and Works, J., concurred.