[Civ. No. 718. Second Appellate District.—December 1, 1909.]

E. C. STERLING, Appellant, v. HENRIETTA H. COLE, as Executrix, etc., of JOHN A. COLE, Deceased, Respondent.

ACTION ON CLAIM AGAINST DECEDENT—AGENCY FOR PURCHASE—PROFITS—CREDIBILITY OF WITNESSES—PROVINCE OF JURY.—In an action on a claim of $5,000 alleged to be due from the estate of a decedent on account of profits made in the purchase by him of property, as plaintiff's agent, where interested witnesses testified to the claim, though they were presumed to speak the truth, yet where there was evidence before the jury, upon which to determine the weight to be given to their testimony, the jury was entitled to consider their motives and interests, and the conduct of the plaintiff in failing to speak when the circumstances required in good faith he should do so, and even entitled to discredit their testimony, and to find against the existence of any agency, though there was no direct testimony in conflict with such witnesses.

ID.—CONCLUSIVENESS OF VERDICT—REVIEW UPON APPEAL.—If, basing their finding upon the circumstances appearing in proof, the jury

found that the testimony of the plaintiff was not entitled to any consideration, this court would not, for the purpose of reversing the judgment, say the verdict was not justified by the evidence. The jury's estimate of the credibility of the witnesses might have been reviewed by the trial court on a motion for a new trial; but cannot be considered by this court on appeal.

ID.—INFERENCE FROM CIRCUMSTANCES — QUESTION OF FACT — RIGHTS OF JURORS.—The inferences to be drawn from the circumstances of the transaction as to the credibility of the witnesses are peculiarly in the province of the jury; and the jurors are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a presumption or other evidence satisfying their minds.

ID.—QUESTION AS TO GOOD FAITH OF CLAIM AGAINST ETATE.—It is held, upon a review of the evidence, that the jury might have distrusted and questioned the good faith of the claim against the estate, since plaintiff discovered all the facts claimed more than a year prior to the death, that he was well acquainted with decedent, and knew that he could not live long, and met him several times and never mentioned the claim until after his lips were sealed in death.

ID.—ABSENCE OF ERROR IN EVIDENCE AND INSTRUCTIONS.—It is held that there was no error in the rulings upon evidence, or in the instructions given; and that a requested instruction assuming an agency, as matter of law, was properly refused.

APPEAL from a judgment of the Superior Court of San Bernardino County. Frank F. Oster, Judge.

The facts are stated in the opinion of the court.

Leonard & Surr, and O'Melveny, Stevens & Milliken, for Appellant.

Byron Waters, and H. M. Willis, for Respondent.

TAGGART, J.—Action to recover the sum of $5,000 alleged to be due plaintiff from defendant's testator on account of profits made by the latter in connection with the purchase of property by him as the agent of plaintiff.

Verdict and judgment for defendant, and plaintiff appeals from judgment on a bill of exceptions. The exceptions mainly relied upon for a reversal are directed to the insufficiency of the evidence to support the general verdict and the findings

of the jury upon the thirteen special issues submitted to them. The principal question here involved is: Does the record show evidence to justify the jury in finding that the decedent, J. H. Cole, was not the agent of plaintiff in the transaction in question? Plaintiff testifies directly that he did employ Cole to purchase the property, and he is corroborated in some respects by one other witness, and unless we can say that the circumstances of the transaction and the other testimony were such that the jury, in the exercise of their exclusive statutory right of judging of the credibility of witnesses (Code Civ. Proc., sec. 1847), could discredit the testimony of the plaintiff and his witness, we must reverse the judgment.

While these witnesses were presumed to speak the truth, the jury were nevertheless entitled to weigh their evidence by their motives and interests, and to consider the conduct of the plaintiff in speaking or failing to speak when the circumstances required that in good faith he should do so. There was evidence of this character before the jury from which to determine the weight to be given the testimony of these witnesses. From such evidence the jury could ascertain the probability or improbability of the truth of the testimony and accept or discredit it, although there was not one direct statement in the evidence in conflict therewith. If, basing their findings upon such evidence, the jury should find that the testimony of plaintiff was not entitled to any consideration, this court would not, for the purpose of reversing the judgment, say the verdict was not justified by the evidence. The inferences to be drawn from the circumstances of the transaction, as to the credibility of the witnesses, are peculiarly within the province of the jury. In other words, jurors are not bound to decide in conformity with the declarations of any number of witnesses which do not produce conviction in their minds, against a presumption or other evidence satisfying their minds. (Code Civ. Proc., sec. 2061, subd. 2.)

Plaintiff's cause of action rests upon the allegations that he gave Cole $25,000 to purchase the interest of one H. E. Harris in a ranch in San Bernardino county, Harris' stock in the Rancho Verde Company, a corporation, in which the title to the ranch was held, and also Harris' interest in some government lands upon which were located certain springs used in connection with the ranch, and that Cole only paid

Harris $20,000 for the property and concealed this fact from plaintiff.

In answer to the special issues submitted to them, the jury found substantially the following facts: That Cole did not agree to purchase the property from Harris as plaintiff's agent; that he did not purchase it as such agent, but on his (Cole's) own account. That Cole represented to plaintiff that the lowest price at which the property could be purchased from Harris was $25,000, and that this representation was true, and that this was the consideration paid by Cole to Harris, but that the consideration did not all consist of money. That the purchase of this property by Cole from Harris was made, together with the purchase of Harris' interests in other properties, and the consideration, as a whole, for all these properties amounted to about $40,000, and was paid by assuming the payment of certain debts and obligations of Harris, consisting of taxes, interest, mortgage indebtedness, and contingent obligations due on a portion of the lands which were purchased from the Southern Pacific Railroad Company.

The testimony of Harris shows that he and Cole were the owners of all the corporate stock of the Rancho Verde Company, consisting of 600 shares, Cole of two-thirds (400 shares), and Harris one-third (200 shares), and half owners in other property, against some of which there were outstanding joint indebtedness of both for a considerable sum, besides the contingent liabilities that might have to be met if the railroad company should maintain against the government its rights to certain of the lands in question which were held by Cole and Harris under contract from the railroad. In October, 1902, Harris gave Cole an option in writing on his interests in the properties, as follows: The 200 shares of Rancho Verde stock for $26,100. Interest in all other properties "over there," $15,000. Later on, October 28, 1902, a thirty-day option more formally drawn and containing a more detailed description of the various properties, was executed by Harris to Cole, wherein Harris agreed to assign and convey to Cole the same property for a consideration of $25,000, and the assumption by Cole of the payment of all amounts due upon any contracts with the S. P. Railroad, and of a mortgage of $20,000, of which Cole and Harris were

each obligated to pay one-half. In explanation of these writings Harris testified that the two were, in effect, the same, that is, that the first showed the gross estimated values of the respective property, while those mentioned in the second were reduced to a net consideration. All the uncertainty as to the contingent liabilities was by the second instrument shifted so that Cole was to assume them and Harris could count on a fixed net sum. The latter was also intended to be a more formal expression of the transaction. These options were executed in the deed of Harris et ux. to Cole, dated , November 25, 1902, except that instead of paying the full $25,000 cash Cole only paid $24,000, which Harris accepted as a full consideration under the second option. The testimony of Harris contained evidence to sustain the findings of the jury as to the transactions between Cole and Harris, except, perhaps, the finding that $25,000 was paid by Cole to Harris. That $20,000 was assumed by the parties to be the net value of the Rancho Verde, and $5,000 the net value of the Las Flores, for the purpose of fixing a net consideration in the last option, in no way detracts from the support which the facts here mentioned give to the inferences of the jury. Neither is it material that subsequently it was developed that nothing need be paid on the railroad contracts. It also appears from the testimony of this witness that while Mr. Potter (who at one time owned 200 shares of the Rancho Verde stock) held his stock the witness placed a net value of $25,000 on one-third of the corporate property by offering Mr. Potter that amount for his stock.

It also appears from the testimony of Harris that he did not consider any proposition of a separate purchase by Cole of the Rancho Verde property and stock, that in the negotiations he wanted to clear up everything between him and Cole, and that all of the operations between him and Cole after giving the option related to the entire property covered by the option. On the other hand, the plaintiff testified that in the negotiations which Cole was authorized to engage in on his behalf the Las Flores property was not mentioned, that he never took any interest in that property, never wanted to buy it, and that it was not included in his purchase. It is clearly established that the purchase by Cole from Harris was made on his own account, whether he had

agreed to buy it for plaintiff or not, and, as we have here-tofore said, the question upon which the case hinges is: Was the jury authorized to discredit the testimony of plaintiff?

During practically all of the same period of time covered by the transaction mentioned negotiations were being car-ried on, and the various steps of a sale and transfer by Cole to plaintiff of the stock of the former in the Rancho Verde Company were being taken, wherein and whereby plaintiff paid and agreed to pay to Cole the sum of $75,000 for his 400 shares of the stock of the corporation and his interest in the property used in connection with the Rancho Verde. In the written contract relating to this sale appears a recital that plaintiff had withheld a large sum of money out of the purchase price to cover the contingency that payment might be required to be made on the railroad contracts in order to make good the title of such portions of the lands as were held in this way. In this connection also appears the re-cital, "that if the party of the second part (Cole), or his heirs or assigns, or the party of the first part, his heirs or assigns, should . . . be the owner of the other one-third in-terest in the stock of said company. . . ." This contract is dated November 21, 1902, and the plaintiff testified that as early as October 24th or November 1st he began his con-versations with Cole relative to the purchase for him of the Harris stock, and that on the same day (November 21, 1902), he authorized Cole to buy the stock for him for $20,000.

In October, 1905, according to the testimony of defend-ant, practically three years after both of the transactions (the sale of the Cole and the sale of the Harris interests) had been closed, other than the adjustment of this matter as to the railroad contracts between plaintiff and Cole, Cole asked plaintiff to repay him the sum of money so held out by him. Plaintiff replied that he was as anxious to pay it as Cole was to have it paid, but that he would have to see his attorney first. At that time no mention was made by plaintiff of the indebtedness upon which the present action was founded. Again, Mrs. Cole heard her husband address plaintiff by tele-phone in relation to this matter in December of the same year, and ask him if he had consulted his attorney in regard to the matter. Cole died November 8, 1906, and on January 17, 1907, defendant as executrix wrote a letter to plaintiff

reminding him of the frequent requests of Mr. Cole for re-payment of the money so withheld, and received a reply under date of January 19, 1907, to the effect that he, plain-tiff, claimed that the estate of John A. Cole owed him a much larger sum than it could be reasonably claimed that he (plaintiff) owed to it. Although plaintiff alleges and tes-tifies that he learned the facts upon which he bases this action between August and December, 1905, he does not testify that he made his claim known to anyone until after the death of Mr. Cole. Indeed, the evidence does not disclose that he ever said anything about it prior to the letter of January 19, 1907.

We think there is evidence here upon which the jury might have distrusted and questioned the good faith of a claim made against an estate. They apparently discredited the testimony of plaintiff and his witness in regard to en-gaging Cole to purchase the property for plaintiff. Their estimate of the credibility of these witnesses might have been reviewed by the trial court on a motion for a new trial, but cannot be considered by this court on appeal. Appellate courts have no way of applying the rules by which the cred-ibility of witnesses is determined. If a party is dissatisfied with the implied findings of the jury in this respect, he must find his remedy with the trial judge who has had an oppor-tunity to hear the testimony at the trial and seen the wit-nesses on the stand. (*Fowden* v. *Pac. C. S. Co.,* 149 Cal. 151, 163, [86 Pac. 178].)

Plaintiff's cause of action is based upon an alleged fraud of Cole. He discovered the fraud more than a year prior to Cole's death. He was well acquainted with Cole, knew the condition of his health, that he was failing and could not hope to live long, met him several times in the interval, and never mentioned that he claimed this $5,000 until Cole, the only person who could tell the other side of the story, if there was one, was in his grave, when he asserted his right to the return of the money. If we should say as a matter of law that under such circumstances the jury must accept the tes-timony of plaintiff and a witness interested with him, as establishing the agency of Cole, then we would also be called upon to say to a jury that they must lay aside their com-mon observation, knowledge and experience in passing upon

the credibility of a witness. We find nothing in the specifications of insufficiency of the evidence to justify a reversal.

The errors of law assigned need not be considered in detail. The question addressed to the witness Harris for the purpose of ascertaining the reason for the different figures given in the two options which he gave to Cole was a proper one. So, also, was the question intended to elicit the understanding with Mr. Potter. This enabled the jury to determine what liabilities Cole assumed in his contract with Harris, and was relevant to the issue, what was paid by Cole to Harris. The other question objected to had the same bearing. No such limitation of the use of special issues as that contended for by appellant here was declared in *Plyler v. Pacific Cement Co.*, 152 Cal. 125, [92 Pac. 56].

We are of opinion that the instructions given correctly declare the law. No instruction was proper in this case which assumed that an agency was proven. The rule that where there is no conflict in the evidence, or the evidence is such that the jury could not find otherwise, the court may instruct them that an agency exists as a matter of law, has no application to this case.

Judgment affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 27, 1910.