[L. A. No. 23538. In Bank. June 10, 1955.]

ROBERT CARL PAULY, Appellant, v. OWEN KING et al., Respondents.

Victor C. Rose, Alfred M. Klein and Robert P. Dockeray for Appellant.

Betts, Ely & Loomis, James A. Williams, Tripp & Callaway and Hulen C. Callaway for Respondents.

EDMONDS, J.—While working as an employee of a roofing subcontractor, Robert Carl Pauly sustained injuries in a fall from a building. He sued the general contractor and another subcontractor, charging negligence. Upon his appeal from a judgment in favor of both defendants, Pauly challenges instructions which define the duties owed to him and rulings upon the admission of evidence.

There is no dispute as to the condition of the premises and the manner in which the injury occurred.

Travelodge Company, as owner and general contractor, constructed the framework of a two story motel building. On the south end of the structure, the lower story extended several feet beyond the upper one so as to form a deck or balcony. The deck, made of wooden sheathing, was to be surfaced with roofing material.

O. H. Logan, the proprietor of the General Sheet Metal Company, subcontracted to supply and install flashing. For

this purpose, strips of narrow gauge sheet steel, about 12 inches wide, are formed somewhat like a trough and nailed to the roof's edge. The edges are then bonded to the roofing material. Ordinarily, flashing is installed so that it protrudes about one-half or three-quarters of an inch beyond the completed side wall, in order to give protection from the weather. In accordance with plans and specifications furnished by the contractor, Logan attached the flashing so that it extended some 5½ inches beyond the edge of the deck. It was so placed in order to cover a brick veneer wall, subsequently to be erected, which would extend upward close to the bottom of the flashing and outward to about one-half inch from the edge.

On the morning of the accident, Pauly and another employee of the roofing subcontractor parked their truck on the south side of the building and began carrying roofing materials to the deck. Their path took them below the overhanging flashing and next to the footing which had been placed in readiness for the veneer wall. After making four trips, they started their work on the roof. Pauly unrolled some paper in preparation for affixing it to the deck. During this operation he stepped backward onto the flashing, which collapsed beneath him.

In his complaint, Pauly charged that Logan and Travelodge were negligent in fastening the flashing without adequate support and failing to warn him of the danger of such construction. The defendants denied generally the allegations of the complaint and, as affirmative defenses, pleaded contributory negligence and assumption of risk. The jury returned a verdict for the defendants.

 An employee of a subcontractor occupies the relationship of an invitee to the main contractor. (*Dingman* v. *A. F. Mattock Co.*, 15 Cal.2d 622, 624 [104 P.2d 26] ; *Hill* v. *Eaton & Smith*, 65 Cal.App.2d 11, 13 [149 P.2d 762].) "The applicable general principle is that the owner of the property, insofar as an invitee is concerned, is not an insurer of safety but must use reasonable care to keep his premises in a reasonably safe condition and give warning of latent or concealed perils. He is not liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care." (*Brown* v. *San Francisco Ball Club, Inc.*, 99 Cal.App.2d 484, 486 [222 P.2d 19] ; *Blodgett* v. *B. H. Dyas Co.*, 4 Cal.2d 511, 512 [50 P.2d

801]; *Jones* v. *Bridges,* 38 Cal.App.2d 341, 345 [101 P.2d 91].)

■ Ample evidence supports the implied finding that the order of construction here followed is consistent with due care. One witness testified that it is the accepted standard of practice in the building industry to construct the structural framework and roof, and to install flashing and roofing materials, before erecting a veneer wall in order to protect it from damage during roofing operations. Another witness, a structural engineer who qualified as an expert, stated that this order of construction is necessary under existing city ordinances to allow compliance with the requirements for building inspection. There is no testimony to the contrary.

■ The evidence is in substantial conflict as to whether reasonable care required the extended flashing to be supported during roofing operations. According to Pauly, custom and usage required that it be supported; no different manner of construction had been followed "in years." A safety engineer also testified that the flashing should have been supported and described a type of support sometimes used. But he qualified his testimony by stating that the primary purpose of support was to avoid distortion of the flashing from other building operations, and admitted that he had never seen such an arrangement used where a veneer wall was to be erected.

The testimony of these witnesses was quite different from that given on behalf of the defendants. An expert in sheet metal work stated that there is no custom or usage requiring temporary support for flashing. He said "it all depends upon the job," and told the jury he could not recall having seen extended flashing which was supported. A construction engineer testified that there is no standard of practice requiring temporary support for flashing, because it "has no structural value; therefore there is no intention that it would ever bear any structural weight." According to this witness, the "set up" here used complied with standard practice "for this type of construction." The jury was free to, and impliedly did, resolve this conflict in evidence against Pauly.

As Pauly evaluates the evidence, it shows without contradiction that a roofer customarily works "all over the roof," flashing being considered a part of it. For that reason, he argues, the defendants should have warned him that the flashing was unsupported. The defendants reply that the evidence concerning the place where a roofer would work is

in conflict. In any event, it is said, there is substantial evidence which would support a finding that any danger arising from unsupported flashing would be obvious to an experienced roofer.

█ Even if the evidence conclusively established a custom and usage of roofers to stand upon all parts of the flashing, Pauly would not be entitled to rely upon it unless to do so is consonant with due care. (*Cf. Polk* v. *City of Los Angeles*, 26 Cal.2d 519, 529 [159 P.2d 931]; *Mehollin* v. *Ysuchiyama*, 11 Cal.2d 53, 57 [77 P.2d 855].) █ "Failure to observe custom may be evidence of negligence, but the standard is not fixed by custom. The standard is always due care. The presence or absence of custom does not alter that standard. Custom may assist in the determination of what constitutes due care. What others do is some evidence of what should be done, but custom is never a substitute for due care." (*Owen* v. *Rheem Mfg. Co.*, 83 Cal.App.2d 42, 45 [187 P.2d 785].)

█ The evidence as to the practice customarily followed by a roofer is not without conflict. Although Pauly and others stated that it was customary for the roofer to stand upon all parts of the roof, including the flashing, other witnesses testified that there is no custom or standard of practice as to where he should stand, but he should choose a footing which is structurally sound. According to these witnesses, that choice depends upon the circumstances of the case. From this testimony, the jury was warranted in concluding that no custom or usage required Pauly to stand upon the flashing and it would not be consistent with due care for him to do so if the danger arising from its being without support should be known to him.

█ There is abundant evidence from which the jury reasonably might conclude that the danger arising from the unsupported flashing would be apparent to an experienced roofer. It is without dispute that the flashing here installed was equipped with a "crimp" or "gravel stop," described as an "inverted 'V' " rising from one-eighth to three-eighths of an inch above the surface of the flashing, which marked the edge of the supporting roof below it. Pauly, himself, testified that from the appearance of the gravel stop he knew the location of the edge of the roof. There was also evidence that the nails by which the flashing was attached to the roof were visible from above and extended only from the gravel stop inward. From these facts, an expert testified, an experienced roofer would assume that the extended flashing was without

support. Furthermore, photographs of the overhanging flashing were shown to the jury, and both Pauly and his coworker testified that it was "obvious" from the ground. Pauly made several trips before the accident through a point from which he might have observed the unsupported flashing, and although he stated he did not do so because his attention was directed elsewhere, the jury reasonably might have concluded that a prudent person should have seen it. In these circumstances, there is substantial evidence to support the implied finding that the danger which might arise from unsupported flashing was so obvious as to require no warning to Pauly from the defendants.

Pauly complains, however, that the following instruction removed that factual determination from the jurors:

"There is nothing inherently dangerous in doing roofing work on a flat deck surface, such as that which was here involved, and therefore it was not encumbent upon either of the defendants to advise plaintiff concerning any apparent condition or conditions which, *being plainly observable*, would advise a reasonable and prudent man to make inquiry concerning any probable dangers which might be involved in their use. The question of whether or not the conditions existing herein were or were not plainly observable to a reasonable and prudent person is one of fact for the jury to determine from the evidence in this case in the light of the Court's instructions." (Italics added.)

By the italicized phrase, according to Pauly, in effect the jurors were told that the "condition of the roof, namely the unsupported metal flashing, was plainly observable to appellant." Relying upon dictum in *Clarke* v. *Volpa Brothers*, 51 Cal.App.2d 173 [124 P.2d 377], he argues that "where an instruction assumes the existence of a fact . . . with respect to which there is a conflict in the evidence, . . . any error in this respect is not . . . cured by other charges which submit to the jury the question whether such fact exists." (P. 179.)

The challenged instruction does not state that the condition *was* plainly observable, but specifies the defendants' duties with regard to "any apparent condition or conditions, which, being plainly observable, would advise a reasonable man to make inquiry concerning probable dangers." At most, it is ambiguous. Although, standing alone, the disputed phrase might be construed as having the meaning contended for by Pauly, it cannot be so read in the context of the complete instruction and others which tendered as an issue of fact,

whether the unsupported flashing presented an apparent danger. ■ Where an instruction claimed to assume the existence of a fact presents only an ambiguity in that regard, the uncertainty may be cured by other instructions or another part of the same one. (*Cf. Hatfield* v. *Levy Brothers*, 18 Cal. 2d 798, 815 [117 P.2d 841] ; *State Comp. Ins. Fund* v. *Lamb*, 96 Cal.App. 236, 241 [273 P. 1080].)

■ Any uncertainty here was clarified by the sentence immediately following the challenged one, which told the jurors that the question ''whether or not the conditions existing herein were or were not plainly observable to a reasonable and prudent person is one of fact for the jury.'' Also, in other instructions the jurors were fully, completely and properly instructed as to the defendants' duties with regard to latent or obvious defects, and that the nature of the defect here involved was a question of fact for their determination.*

---

*All of the following instructions were given at the request of Pauly:

"Although a dangerous condition may be readily observable from one point of view, it may not be readily observable from another point of view. The test is not whether a flashing would be readily observable from the street but whether it would be readily observable at that time when an ordinarily prudent person would make the observation. If an ordinarily prudent person under the same or similar circumstances as Mr. Pauly would not have made an observation of the overhanging of the flashing from the street, and if he would not have made an observation until that time when Mr. Pauly did observe it, then the test is whether or not the dangerous condition was readily observable when Mr. Pauly in the exercise of ordinary care finally made the observation.

"Defects which are ordinarily plainly visible do not necessarily preclude a party who was injured thereby from recovery for negligence if a reasonably prudent person under the same or similar circumstances would not have observed the defect.

''I instruct you that if there was a latent condition upon the roof of which the plaintiff was not aware, and which condition was dangerous, it was the duty of the defendant Travelodge Corporation to warn the plaintiff of any danger of which they knew or which they, as prudent people, ought to know.

"I further instruct you that the duty to warn the plaintiff could not be delegated and a notice of the danger given to anyone other than the plaintiff himself, is not in law notice to the plaintiff.

''I instruct you that a workman is not charged with knowledge of a latent or concealed defect and he may recover damages resulting from such latent defect of which he has no knowledge and provided that the general contractor who created or maintained the latent or concealed defect knew, or by the exercise of reasonable care should know, of such defect and fail to remedy or warn the workman of that danger.

"I instruct you that even if an alleged defect or danger in the construction was patent and observable, nevertheless, you must determine whether or not it was a want of ordinary care on the part of the plaintiff not to have looked at the flashing and to have made an inspection of it before stepping on it. If the plaintiff acted like an

They were given the test for determining whether any dangerous condition was obvious or concealed. They were also told that it would be their duty to determine ''from all of the evidence in this case'' if there was a dangerous condition and whether it was latent or patent. Furthermore, they were cautioned against assuming, from any statement as to the possible existence of a state of facts, that the court was of the opinion that the evidence proved their existence.

A colloquy, occurring when the jurors returned from their deliberations to request additional instructions, plainly indicates that they did not understand the challenged instruction to state, as a matter of law, that the dangerous condition was patent. Clearly, they considered that question to be one of fact for their determination because one of them asked to have repeated the instruction concerning ''a latent potential danger on the job and the duty of the general contractor toward a

---

ordinary prudent person under the same or-similar circumstances, that is all that is required of him since the law does not require exceptional care, skill or foresight.

''I instruct you that a failure to observe a defect or dangerous condition, if any there was, which might have been seen by close scrutiny does not necessarily constitute contributory negligence on the part of one who, without previous knowledge of its existence, is injured thereby. The test is whether the person who failed to observe a defect or dangerous condition was exercising ordinary care as such has been defined to you in these instructions.

"The test of whether a defect is patent or latent is whether, to an ordinarily prudent person under the same or similar circumstances, it is readily apparent to the eye. If it is not readily apparent to the eye, it is not a patent or obvious defect, but is a latent defect.

"It will be your duty to determine from all of the evidence in this case whether or not there was a dangerous condition created or maintained by defendant Travelodge Corporation herein and to further determine whether this dangerous condition was clearly visible or obvious to the plaintiff or whether he had actual or constructive knowledge of the existence of the dangerous condition or whether, in fact, the dangerous condition was actually a latent or concealed defect. Ordinarily, a contractor is not liable for injury sustained by a workman as a result of defects clearly visible or obvious to him or when he has actual or constructive knowledge of the existence of the defects. On the other hand, the workman is not charged with knowledge of a latent or concealed defect and he may recover damages resulting from such latent defect of which he had no knowledge provided that the contractor created or maintained the same or by the exercise of reasonable care should know of such defect and fail to remedy or warn the workman of that danger.

"Statements of law often cannot be made abstractly, but must be related to possible situations of fact. Throughout my instructions you will bear in mind that whenever the possibility of a certain state of facts is assumed for the purpose of stating the applicable law, I do not mean to imply an opinion that the evidence has proved the existence of those facts, nor to suggest an opinion favorable or unfavorable to either or any party.''

subcontractor or tradesman thereupon.'' The record is as follows:

''THE COURT: The test of whether a defect is patent or latent is whether, to an ordinarily prudent person under the same or similar circumstances, it is readily apparent to the eye. If it is not readily apparent to the eye, it is not a patent or obvious defect, but is a latent defect.

''JUROR JAMESON: I believe that is it.

''THE COURT: That is it? You were the one that made the inquiry concerning that particular fact?

''JUROR JAMESON: I thought there was another one but I guess that is all.

''THE COURT: It will be your duty to determine from all of the evidence in this case whether or not there was a dangerous condition created or maintained by defendant Travelodge Corporation herein and to further determine whether this dangerous condition was clearly visible or obvious to the plaintiff or whether he had actual or constructive knowledge of the existence of the dangerous condition or whether, in fact, the dangerous condition was actually a latent or concealed defect. . . .''

Pauly also complains of the portion of the instruction which states that ''[t]here is nothing inherently dangerous in doing roofing work on a flat deck surface, such as that which was involved here. . . .'' He reads the phrase ''nothing inherently dangerous'' as referring to the condition of the flashing, thereby withdrawing that factual issue from the jury. Plainly, however, the reference is to ''doing roofing work on a flat deck surface,'' which indisputably was being done at the time of the accident. Any uncertainty was resolved by other instructions which clearly stated that the jurors were to determine, as a question of fact, whether any dangerous condition existed. There can be no doubt that the jurors so considered the issue when the additional instructions which definitely posed the issue as a factual one are read.

Pauly also argues, however, that an instruction describing roofing work as not inherently dangerous conflicts with another one relating to the degree of caution required of him in exercising reasonable care for his own safety. In the latter instruction, the jurors were charged that when a lawful employment requires one to take risks beyond those which ordinarily would be taken by a reasonably prudent person, ''the necessities of such a situation, insofar as they

limit the caution that he may take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care.'' In effect, he claims, the jury was told that he was not in a position of danger and the instruction, therefore, erroneously specified the amount of caution required of him for his own safety and enabled it to hold that the lawful and proper activities of a roofing worker amounted to negligence.

The challenged instruction defines the duties of the defendants toward Pauly and does not purport to encompass Pauly's duty with regard to his own safety. It is based upon *Hard* v. *Hollywood Turf Club*, 112 Cal.App.2d 263 [246 P.2d 716], where in a comparable situation the court said: ''There is nothing inherently dangerous in doing work on a high scaffold (citation) and therefore it was not incumbent upon appellant [general contractor] to advise respondent [employee of a subcontractor] against using his own scaffold.'' (P. 275.) For that rule the court relied upon *Schmidlin* v. *Alta Planing Mill Co.*, 170 Cal. 589 [150 P. 983]. There the court considered the liability of a contractor to the employee of a subcontractor for the negligent act of another subcontractor. The contractor is not responsible for such negligence, the court declared, unless the negligent act of the subcontractor is performed pursuant to the directions of the contractor, or the activity is so inherently dangerous that the duty of due care in performing it is nondelegable.

Apparently in the Hard case the court was concerned with a possible extension of the rule concerning nondelegable duties to a situation where a contractor might be held liable for a failure of a subcontractor to exercise due care in furnishing equipment to his employee. Because the activity there shown was not ''inherently dangerous'' (meaning apparently not ultrahazardous), the court held that there was no responsibility of the contractor to warn the employee of any defect in the equipment furnished by the employer-subcontractor.

Here, the apparent purpose of the instruction was to advise the jury that the general contractor was under no duty to warn Pauly of any dangers arising from his doing roofing work on a flat deck surface, which would be apparent to an experienced roofer. In view of the numerous instructions which correctly defined Pauly's duty for his own safety, it is very doubtful that the jurors would attach to this instruction the interpretation given to it by Pauly. So to hold would require this court to suppose that the jurors found him guilty

of contributory negligence for doing acts properly to be performed by a roofer merely because one not engaged in that occupation would not do them. Any uncertainty in the instruction could not have prejudiced Pauly.

█ Another instruction, relating to the duty of a subcontractor with regard to complying with the plans and specifications furnished by the general contractor, is challenged on the ground that it is unsupported by "any decided case or legal authority." This instruction, however, is based upon, and is an almost verbatim statement of, the comment to section 404 of the Restatement of Torts. Furthermore, since it related only to the duty of Logan, the jury could not have predicated its verdict upon this instruction.

█ Pauly's final contention is that the trial judge committed prejudicial error in excluding his offers of proof made during rebuttal. They consisted of the testimony of Pauly and another witness who had testified for the plaintiff. The ground for exclusion of this evidence was that it presented only a reiteration of that previously given by them. As such, it was only cumulative, and it cannot be said, as a matter of law, that the trial judge abused his discretion in excluding it. (*Cf. Moore* v. *Marshall,* 41 Cal.App.2d 490, 494-495 [107 P.2d 89].)

The judgment is affirmed and the purported appeal from the order denying a new trial is dismissed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER J.—I dissent.

I agree with plaintiff that certain instructions were prejudicially erroneous.

A hotly disputed question of fact in this case, and a most important one, was whether plaintiff failed to exercise due care when he did not see the dangerous condition of the flashing. The record shows that on his four trips to the roof he was carrying, each time, a heavy load and that he was walking on uneven ground which necessitated a close watch to see where he was going. Plaintiff's evidence also showed that a roofer customarily worked all over the roof, including the flashing; and that it was not the custom to leave flashing unsupported; defendant's evidence was to the effect that there was not necessarily such a custom, and that flashing was sometimes left unsupported. This merely created a con-

flict—the resolution of which, *under proper instructions*, was for the determination of the jury. A litigant is entitled to instructions presenting his theory of the case (*Buckley* v. *Shell Chemical Co.,* 32 Cal.App.2d 209 [89 P.2d 453]; *Morrow* v. *Mendleson,* 15 Cal.App.2d 15 [58 P.2d 1302]; *Stickel* v. *Durfee,* 88 Cal.App.2d 402 [199 P.2d 16]). In *Ferrula* v. *Santa Fe Bus Lines,* 83 Cal.App.2d 416, 424 [189 P.2d 294], it was stated that it was the court's duty to give instructions expounding the law upon every reasonable theory of the case which found support in the evidence. (See also *Matsumoto* v. *Renner,* 90 Cal.App.2d 406 [202 P.2d 1051]; *Baugh* v. *Beatty,* 91 Cal.App.2d 786 [205 P.2d 671]; *Rather* v. *City & County of San Francisco,* 81 Cal.App. 2d 625 [184 P.2d 727].)

Whether the unsupported flashing presented an obvious danger and so required no warning to plaintiff from the defendants was a question of fact for the jury to determine.

I agree with plaintiff that the following instruction removed that issue from the jury's determination by suggesting the answer to it: "There is nothing inherently dangerous in doing roofing work on a flat deck surface, such as that which was here involved, and therefore it was not encumbent upon either of the defendants to advise plaintiff concerning any apparent condition or conditions which, being plainly observable, would advise a reasonable and prudent man to make inquiry concerning any probable dangers which might be involved in their use." The just quoted first part of the instruction tells the jury, as a matter of law, that there was nothing dangerous on the roof; that any "apparent" condition was "plainly observable" to a reasonably prudent person. This took from the jury the most contested issue in the case: whether the condition was latent, or patent, and whether or not the condition was dangerous. The jury was flatly told there was nothing "inherently dangerous" in the type of work plaintiff was doing. Tacked on as a sort of afterthought was the statement that "The question of whether or not the conditions existing herein were or were not plainly observable to a reasonable and prudent person is one of fact for the jury to determine from the evidence in this case in the light of the Court's instructions." The jury, after being told there was nothing dangerous in the work, that any "apparent" (and hence *patent*) condition was "plainly observable" was then told that it might decide the issue. The instruction is clearly inconsistent in itself. The majority

opinion seeks to get around this fact by saying that the instruction does not state that the condition "was plainly observable, but specifies the defendants' duties with regard to 'any apparent condition or conditions, which, being plainly observable, would advise a reasonable man to make inquiry concerning probable dangers.' At most, it is ambiguous." This statement is ridiculous. Nothing could be more certain than that the jury was instructed that neither of the defendants was under a duty to warn plaintiff of an "apparent condition" *which, being plainly observable* would advise a reasonable and prudent man to make inquiry concerning any danger. Webster defines the word "being" as "existing, present."

The correct rule is set forth in 24 California Jurisprudence, section 101, page 841 et seq.: "The province of the jury is invaded where an instruction assumes the existence of a fact which is not in evidence, or with respect to which there is a conflict of evidence, and any error in this respect is not, it has been held, cured by other charges which submit to the jury the question whether such fact exists." (*Cahoon* v. *Marshall*, 25 Cal. 197, 202; *Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195 [215 P. 675]; *Fidelity etc. Co.* v. *Paraffine Paint Co.*, 188 Cal. 184 [204 P. 1076]; *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 P. 599]; *Sutter Butte Canal Co.* v. *American R. & A. Co.*, 182 Cal. 549 [189 P. 277]; *Brinck* v. *Bradbury*, 179 Cal. 376 [176 P. 690]; *Dawson* v. *Pacific Elec. Ry. Co.*, 177 Cal. 268 [170 P. 603]; *Hart* v. *Fresno Traction Co.*, 175 Cal. 489 [167 P. 885]; *Pigeon* v. *W. P. Fuller & Co.*, 156 Cal. 691 [105 P. 976]; *Still* v. *San Francisco etc. R. Co.*, 154 Cal. 559 [98 P. 672, 129 Am.St.Rep. 177, 20 L.R.A.N.S. 322]; *Anderson* v. *Seropian*, 147 Cal 201 [81 P. 521]; *Gribben* v. *Yellow Aster etc. Co.*, 142 Cal. 248 [75 P. 839]; *Roche* v. *Baldwin*, 135 Cal. 522 [65 P. 459, 67 P. 903]; *Wahlgren* v. *Market Street Ry. Co.*, 132 Cal. 656 [62 P. 308, 64 P. 993]; *Williams* v. *Casebeer*, 126 Cal. 77 [58 P. 380]; *De Baker* v. *Southern Calif. R. Co.*, 106 Cal. 257 [39 P. 610, 46 Am.St.Rep. 237]; *Childers* v. *San Jose Mercury P. & P. Co.*, 105 Cal. 284 [38 P. 903, 45 Am.St.Rep. 40]; *Dean* v. *Ross*, 105 Cal. 227 [38 P. 912]; *Elledge* v. *National City & O. R. Co.*, 100 Cal. 282 [34 P. 720, 852, 38 Am.St.Rep. 290]; *Hill* v. *McKay*, 94 Cal. 5 [29 P. 406]; *Rosenberg* v. *Durfee*, 87 Cal. 545 [26 P. 793]; *Vulicevich* v. *Skinner*, 77 Cal. 239 [19 P. 424]; *Llewellyn Steam Condenser Mfg. Co.*, v. *Malter*, 76 Cal. 242 [18 P. 271]; *Quinn* v. *Dresbach*, 75

Cal. 159 [16 P. 762, 7 Am.St.Rep. 138]; *St. Ores* v. *McGlashen*, 74 Cal. 148 [15 P. 452]; *Wood* v. *Tomlinson*, 53 Cal. 720; *Bradley* v. *Lee*, 38 Cal. 362; *Caldwell* v. *Center*, 30 Cal. 539 [89 Am.Dec. 131]; *Preston* v. *Keys*, 23 Cal. 193; *Garrison* v. *Pearlstein*, 68 Cal.App. 334 [229 P. 351]; *Goehring* v. *Rogers*, 67 Cal.App. 253 [227 P. 687]; *Comer* v. *Los Angeles Ry. Corp.*, 66 Cal.App. 219 [225 P. 869]; *Markart* v. *Zeimer*, 67 Cal.App. 363 [227 P. 683]; *Estate of Hewitt*, 63 Cal.App. 440 [218 P. 778]; *Sommer* v. *Martin*, 55 Cal.App. 603 [204 P. 33]; *McKinnon* v. *United Railroads*, 55 Cal.App. 96 [203 P. 122]; *Jones* v. *United Railroads*, 54 Cal.App. 744 [202 P. 919]; *Randolph* v. *Hunt*, 41 Cal.App. 739 [183 P. 358]; *Thompson* v. *Southern Pac. Co.*, 31 Cal.App. 567 [161 P. 21]; *Vallejo etc. R. R. Co.* v. *Home Sav. Bank*, 24 Cal.App. 166 [140 P. 974]; *Ingalls* v. *Monte Cristo Oil & Dev. Co.*, 23 Cal.App. 652 [139 P. 97]; *Petersen* v. *California Cotton Mills Co.*, 20 Cal.App. 751 [130 P. 169]; *Sterling* v. *Cole*, 12 Cal. App. 93 [106 P. 602]; *Matteson* v. *Southern Pac. Co.*, 6 Cal.App. 318 [92 P. 101]; *Carey* v. *Pacific Gas & Elec. Co.*, 75 Cal.App. 129 [242 P. 97]; *Marston* v. *Pickwick Stages, Inc.*, 78 Cal.App. 526 [248 P. 930]; *Waack* v. *Maxwell Hardware Co.*, 210 Cal. 636 [292 P. 966]; *Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556 [296 P. 76]; *Bakos* v. *Shell Co. of Calif.*, 115 Cal.App. 142 [300 P. 982]; *Sanchez* v. *Pacific Auto Stages*, 116 Cal.App. 392 [2 P.2d 845]; *Collins* v. *Hodgson*, 5 Cal.App.2d 366 [42 P.2d 700]; *Reed* v. *Simpson*, 32 Cal.2d 444 [196 P.2d 895]; *Moran* v. *Zenith Oil Co.*, 92 Cal.App.2d 236 [206 P.2d 679]; *Dodge* v. *San Diego Elec. Ry. Co.*, 92 Cal.App.2d 759 [208 P.2d 37].)

In the majority opinion is found this statement: "Relying upon dictum in *Clarke* v. *Volpa Brothers*, 51 Cal.App.2d 173 [124 P.2d 377], he argues that 'where an instruction assumes the existence of a fact . . . with respect to which there is a conflict in the evidence, . . . any error in this respect is not . . . cured by other charges which submit to the jury the question whether such fact exists.' (P. 179.)" It should be noted that the opinion neither states, recognizes, nor seeks to distinguish the general rule set forth in the numerous cases heretofore cited as well as in the Clarke case. The opinion implies that the instruction did not assume a fact concerning which the evidence was in sharp conflict and argues that it is, at most, merely ambiguous.

"Latent" is defined by Webster to mean: "to lie hid or concealed; not visible or apparent." Plaintiff's argument

concerning the instruction is that it assumes that the danger was patent, or obvious, by telling the jury that any *apparent* condition was *plainly observable* to a reasonably prudent person. Compare plaintiff's contention with the following statement from the majority opinion: "A colloquy, occurring when the jurors returned from their deliberations to request additional instructions, clearly indicates that they did not understand the challenged instruction to state, as a matter of law, that the dangerous condition was patent." It would appear obvious that a jury, composed of laymen, must have been thoroughly baffled in learning that the condition was apparent, and readily observable, and then later learning that it was up to them to decide whether it was, or was not. The majority opinion illustrates with unusual force the good reason underlying the general rule heretofore set forth.

I would reverse the judgment.