2 Cal.Rptr. 735]

[Civ. No. 9655.   Third Dist.   Feb. 15, 1960.]

ETHEL ILOFF, Appellant, v. PURITY STORES, LTD.
(a Corporation) et al., Respondents.

William L. Beeman for Appellant.

Taft, Wright & Hopkins for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment entered upon a defense verdict in a personal injury action.

Appellant sustained a fracture of her hip when she fell in a store operated by respondent Purity Stores, Ltd., and managed by respondent Flynn. There is no question as to the status of appellant at the time of the accident. ▮▮▮ She was an invitee to whom the respondent store owed the duty ''to exercise ordinary care to keep the premises in a reasonably safe condition, or to warn . . . of danger. The duty was not limited to conditions actually known . . . to be dangerous, but extended also to conditions which might have been found dangerous by the exercise of reasonable care.'' (*Raber* v.

*Tumin*, 36 Cal.2d 654, 658 [226 P.2d 574]; *Pauly* v. *King*, 44 Cal.2d 649, 653 [284 P.2d 487].)

Appellant testified that as she slipped and fell, she felt something slick under her heel. An eyewitness testified that the floor at the spot where appellant fell had an oily appearance, and that she had observed a similar condition on several prior occasions when she, herself, slipped and about which she made complaint to the employees of the store. This witness described the appellant's fall by saying that her feet just shot out from under her and she came down.

We find it necessary to reverse the judgment appealed from by reason of an erroneous instruction given on request of defendants concerning assumption of risk, but before discussing that we note that at the beginning of the trial plaintiff sought to call Mr. Jack Flynn, a defendant and the managing agent of his codefendant, Purity Stores, Ltd., to the stand for examination under section 2055 of the Code of Civil Procedure. ■■■ The following occurred: "THE COURT: Hold on now, you have got to make a prima facie case before you can put him on under 2055. He isn't fit to put under the gun now." Over the protest of counsel for appellant, this ruling of the court was adhered to and appellant was compelled to call other witnesses to establish a prima facie case before being permitted to examine Mr. Flynn under 2055. The court abused its discretion when it refused to allow counsel for appellant to call Mr. Flynn when counsel desired to do so. There is no requirement that a prima facie case must be made out before an adverse party or an adverse party's agent can be called under 2055. (*Murry* v. *Manley*, 170 Cal.App.2d 364 [338 P.2d 976].)

■■■ It was obvious that this case must turn upon the condition of the floor in the store at the point where appellant fell. After both appellant and an eyewitness had testified that the floor was slick and oily, appellant called Mr. Flynn under 2055. He testified that the floor was in good condition and was free from cracks. The following then occurred: "Q. Isn't it a fact that in places where the tongue and groove flooring comes together, that the floor is worn and that there is recesses. A. I wouldn't call them cracks or recesses. . . . The boards fit just as tight as they get together. Q. Where they fit, isn't there a wearing where there is one portion lower, where dirt and this compound accumulate? A. I don't exactly know what you mean, but there are no cracks in the floor to my knowledge. Q. Well, is the floor absolutely level like this table or are there

portions of it where there are little gouges? THE COURT: He already answered you, Counsel, a dozen times. MR. MARTIN [Counsel for Appellant] : He said there isn't cracks, I am not sure we are talking about the same thing. THE COURT: Yes you are too, you are talking about the cracks and he says there isn't any. You have asked a dozen questions about that. MR. NEWMAN [Counsel for Respondents] : Judge, I will stipulate if it will help counsel that even on this —— THE COURT: (Interposing) No, we won't stipulate to anything like that, these floors are all right. I will vouch for that. Don't worry about that, Al [referring to counsel for respondents], I will take care of that. MR. NEWMAN: Yes, all right, Judge." It was improper for the court to indicate its views during the course of the trial on so vital an issue, and appellant's complaints are well grounded.

At the request of respondents the court instructed the jury as follows: "If you find from the evidence that the Plaintiff knew, or by the exercise of ordinary care and prudent observation should have known of the condition of the floor as she alleges in her complaint existed at the time and place in question, and nevertheless proceeded thereon, then I instruct you that she assumed the risk of such injuries as may have resulted from the conditions which she knew or which by her observation she should have detected and avoided." This instruction was prejudicially erroneous since it "permitted the jury to find that plaintiff had assumed the risk without finding that she had actual knowledge of the danger." (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 162 [265 P.2d 904].)

In the Prescott case, which involved a claim of damages for injuries occasioned when the plaintiff therein fell on a sidewalk near an entrance to the defendant's grocery store, and wherein an instruction had been given containing substantially the same error as appears in the one before us here, the Supreme Court pointed out that the defenses of assumption of risk and contributory negligence are based on different theories; that contributory negligence arises from a lack of due care while the defense of assumption of risk will negative liability regardless of the fact that plaintiff may have acted with due care; that it is improper to tell a jury that they may find that a plaintiff has assumed the risk of injury without finding that the plaintiff had actual knowledge of the danger. (Citing *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 384-385 [240 P.2d 580]; *Plotts* v. *Albert,* 120 Cal.App.2d 105 [260 P.2d 621].) In the Prescott case the Supreme Court said that

under the circumstances therein appearing the erroneous instruction given on assumption of risk resulted in a miscarriage of justice. We are unable to find any material distinction between that case and this, and accordingly hold, as was there held, that the giving of this instruction resulted in a miscarriage of justice.

The judgment appealed from is reversed.

Peek, J., and Schottky, J., concurred.